**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PERFORMANCE SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHIRP INNOVATION, LLC,<br><br>Defendant. | C.A. No. ________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

# TABLE OF CONTENTS


**I. NATURE OF THE ACTION ..... 1**

**II. THE PARTIES ..... 5**

**III. JURISDICTION AND VENUE ..... 5**

**IV. ASSERTED PATENTS ..... 6**

**V. PERFORMANCE SOLUTIONS, THE PATENTED TECHNOLOGY, AND THE LICENSED MARKET ..... 7**

A. Mr. Dye's Clinical Insight and Claimed Core-Overlay-Projection Architecture ..... 7

B. Performance Solutions' Commercialization and Licensing Program ..... 12

C. Marketplace Enforcement, Federal Court Litigation, and USPTO Review of Performance Solutions' Patent Rights ..... 17

**VI. DEFENDANT'S INFRINGEMENT ..... 25**

A. Overview of the Elements of the Asserted Claims ..... 25

B. Infringement of the Wheel+ Products ..... 26

C. Infringement of the Wheel XL and Wheel Pro Products ..... 37

D. Infringement of the Wheel XR Products ..... 40

E. Chirp Uses the Same Projection-Based Configurations as Authorized Licensees ..... 52

F. Chirp Sells the Same Types of Unauthorized Competing Products Performance Solutions Removed from Amazon ..... 55

**VII. DEFENDANT'S MARKET REPOSITIONING, EXPANSION, AND HARM TO THE AUTHORIZED MARKET ..... 58**

**VIII. DEFENDANT'S NOTICE AND WILLFULNESS ..... 63**

A. Patent Marking and Constructive Notice ..... 63

B. Defendant's Sophistication and Actual Notice of Performance Solutions' Patent Rights ..... 68

C. Defendant's Prior Intellectual Property Judgment Further Supports Willfulness ..... 71

**IX. CAUSES OF ACTION ..... 73**

**X. DEMAND FOR JURY TRIAL ..... 85**

**XI. PRAYER FOR RELIEF ..... 85**

**XII. TABLE OF EXHIBITS ..... 87**

Plaintiff Performance Solutions, LLC ("Performance Solutions" or "Plaintiff") files this Complaint against Defendant Chirp Innovation, LLC ("Chirp" or "Defendant") and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from Chirp's infringement of Performance Solutions' patents covering an integrated foam roller with a core, overlay, and raised projections designed to extend into soft tissue. Projection-based foam rollers of the type at issue here are commonly used to release muscle tightness, address knots and trigger points, improve mobility, and support recovery. Chirp's infringing foam rollers are sold within its Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines (the "Accused Products") and use Performance Solutions' patented core-overlay-projection technology. Performance Solutions brings this action to stop Chirp's infringement, recover damages for Chirp's unauthorized use and sale of Performance Solutions' patented technology, and obtain the full relief warranted by Chirp's conduct, including enhanced damages for willful infringement under 35 U.S.C. § 284, a declaration that this case is exceptional under 35 U.S.C. § 285, attorneys' fees and costs under 35 U.S.C. § 285, and all other appropriate remedies.

2. Performance Solutions' patents trace to the clinical insight of Kipp K. Dye, Performance Solutions' co-owner and manager. Mr. Dye is a licensed physical therapist with over thirty-five years of clinical experience and formal training in massage therapy. Through that experience, Mr. Dye recognized the limits of conventional smooth-surfaced foam rollers: they could apply broad compression, but could not effectively mobilize soft tissue, meaning fascia, muscle, tendons, and ligaments. Mr. Dye was the first to solve that problem with the integrated projection-based foam roller technology described above.

3. Mr. Dye has been awarded twelve United States utility patents covering his

inventions. Six are asserted here: U.S. Patent Nos. 9,539,167 (the "'167 Patent"); 9,656,112 (the "'112 Patent"); 10,278,890 (the "'890 Patent"); 10,695,260 (the "'260 Patent"); 12,193,986 (the "'986 Patent"); and 12,201,571 (the "'571 Patent") (collectively, the "Asserted Patents"). The Asserted Patents claim the same foundational architecture identified above: a cylindrically shaped core made of closed cell foam, rubber, or plastic; an overlay made of the same classes of materials surrounding the core; and projections configured to extend into soft tissue of a user. Performance Solutions is the assignee of all six Asserted Patents.

4. Performance Solutions first commercialized Mr. Dye's technology through its own projection-based foam roller products, then built a patent-based licensing business around those rights. It licensed the Asserted Patents to recognized industry participants, including 321Strong, Fitbeast, Implus Footcare, Oceanfoam, and Zmarthumb.

5. Protecting that licensed market required sustained, costly enforcement. Performance Solutions secured the removal of more than 120,000 unauthorized marketplace listings, including more than 60,000 from Amazon alone. Those enforcement efforts prompted accused infringers to respond with patent reexamination requests and declaratory judgment actions challenging the validity, infringement, and enforceability of the Asserted Patents, and at times required Performance Solutions to enforce its patent rights in federal district court. Performance Solutions vigorously defended its patents to protect licensees who paid for the right to use Performance Solutions' patented technology.

6. This action arises from that same enforcement backdrop. While Performance Solutions was devoting substantial resources to enforcing and defending its patent rights against other unauthorized sellers, Chirp generated significant revenue from unlicensed products sold on Amazon and other channels and expanded its infringement across multiple product lines. Chirp

thus took advantage of the licensed market Performance Solutions was working to protect while avoiding the licensing obligations borne by authorized sellers.

7. Performance Solutions' history of defending and enforcing its patent rights has repeatedly confirmed the strength of the same rights Chirp infringes. Four of the six Asserted Patents have been extensively tested in *ex parte* reexaminations. The United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB") confirmed the patentability of all 107 challenged claims and construed key claim limitations. The two remaining Asserted Patents issued in response to those favorable PTAB decisions.

8. Performance Solutions has also enforced its patent rights in federal court against materially similar projection-based foam roller products using the same core-overlay-projection architecture at issue here. In *PowX Inc. v. Performance Solutions, LLC*, Case No. 24-CV-01389 (S.D.N.Y.) (the "*PowX* litigation"), the district court granted Performance Solutions a preliminary injunction, later entered final judgment for Performance Solutions, found willful infringement, trebled damages, declared the case exceptional, found PowX liable for malicious prosecution based on its declaratory judgment claims, and awarded Performance Solutions more than $1.79 million in damages and attorneys' fees. In awarding damages, the district court credited Performance Solutions' licensing evidence and found that a 21% royalty rate was reasonable for the asserted patent rights.

9. As shown in the infringement claim charts in Exhibits 7-53 to this Complaint, each Accused Product in the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines contains the claimed core, overlay, and projections configured to extend into soft tissue. Performance Solutions confirmed the composition, dimensions, and other characteristics of those structures through product inspection, material analysis, and measurement. Chirp's own marketing further confirms

that the Accused Products contain those same infringing features.

10. Chirp was not operating in ignorance of Performance Solutions' patent rights. It deliberately moved the Accused Products into the same Amazon marketplace category where Performance Solutions had spent years removing unauthorized listings, thereby competing head-to-head with authorized, patent-marked products whose listings identify the Asserted Patents by number. Even more, in a 2019 YouTube marketing video, Chirp selected a marked 321Strong licensed foam roller as the direct comparator for its own Wheel+ product and promoted the Chirp product as the superior alternative. Chirp also encountered Performance Solutions' patent portfolio during prosecution of its own "Massage Device" design patent application for the Wheel XR 4" product, where the USPTO examiner identified multiple Performance Solutions patents, including one Asserted Patent. Despite repeatedly being on notice of Performance Solutions' patent rights, Chirp never sought a license, never designed around the Asserted Patents, and never stopped selling the Accused Products.

11. Chirp's conduct is especially culpable because it previously consented to a federal judgment and permanent injunction involving its knockoff products and infringement of a third party's patents, trademarks, and copyrighted materials. That judgment, entered in 2019, put Chirp on notice of the consequences of building a business around products that infringe another company's intellectual-property rights.[1]

12. Chirp's conduct strikes at the heart of Performance Solutions' patent rights and licensing program. Performance Solutions brings this action to hold Chirp accountable for infringing Performance Solutions' patents and for competing against authorized licensees without

---

[1] *See* Exhibit 84, Consent Judgment and Permanent Injunction, *Neck Hammock, Inc. v. Chirp, et al.*, No. 2:19-cv-00521-TS (D. Utah Oct. 1, 2019), ECF No. 9. This lawsuit is discussed further in Section VIII.C, *infra*.

paying for the rights those licensees pay to use.

## II. THE PARTIES

13. Plaintiff Performance Solutions, LLC is a Massachusetts Limited Liability Company having its principal place of business at 5 Commonwealth Avenue, Suite 2B, Natick, Massachusetts 01760.

14. Defendant Chirp Innovation, LLC is a Delaware Limited Liability Company having its principal place of business at 3900 N Traverse Mountain Blvd., Suite 300, Lehi, UT 84043.

## III. JURISDICTION AND VENUE

15. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 271 et seq. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

16. This Court has general and specific personal jurisdiction over Defendant consistent with due process and Delaware's long-arm statute.

17. This Court has general personal jurisdiction over Defendant because Defendant is incorporated in Delaware and its affiliations with Delaware are so continuous and systematic as to render it at home in Delaware.

18. This Court has specific personal jurisdiction over Defendant because Defendant, directly or through subsidiaries, affiliates, or intermediaries acting as its agents, continuously solicits and transacts business in this District, and makes, uses, sells, offers for sale, imports, and markets products in the United States, this State, and this District that infringe one or more claims of the Asserted Patents.

19. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendant is incorporated in and is a resident of this District.

## IV. ASSERTED PATENTS

20. Performance Solutions is the owner of all rights, title, and interest in the Asserted Patents.

21. The ’167 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on January 10, 2017. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’167 Patent is attached as Exhibit 1.

22. The ’112 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on May 23, 2017. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’112 Patent is attached as Exhibit 2.

23. The ’890 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on May 7, 2019. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’890 Patent is attached as Exhibit 3.

24. The ’260 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on June 30, 2020. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’260 Patent is attached as Exhibit 4.

25. The ’986 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on January 14, 2025. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’986 Patent is attached as Exhibit 5.

26. The ’571 Patent, titled “Therapeutic, Fitness, and Sports Enhancement Device,” was duly and lawfully issued by the USPTO on January 21, 2025. Performance Solutions is the assignee as reflected on the face of the patent. A true and correct copy of the ’571 Patent is attached as Exhibit 6.

## V. PERFORMANCE SOLUTIONS, THE PATENTED TECHNOLOGY, AND THE LICENSED MARKET

### A. Mr. Dye’s Clinical Insight and Claimed Core-Overlay-Projection Architecture

27. Kipp K. Dye, co-owner and manager of Performance Solutions, is a licensed sports and orthopedic physical therapist with more than 35 years of clinical experience and formal training in massage therapy. Through years of hands-on patient care, Mr. Dye observed that conventional self-myofascial release tools, including smooth-surface foam rollers, were limited in their therapeutic effect because they primarily applied broad, surface-level compression.

28. Soft tissue, meaning muscle, fascia, tendons, and ligaments, plays a critical role in mobility, strength, flexibility, balance, pain relief, and recovery. Effective soft tissue mobilization can provide therapeutic and performance benefits, including decreased muscle soreness, reduced joint stress, increased range of motion, improved tissue extensibility, and improved neuromuscular efficiency.

29. Before Mr. Dye’s inventions, a predominant self-mobilization roller tool was the “conventional smooth roller.” A user would lie or sit on this roller and move back and forth to apply pressure to target areas of the body. Conventional smooth rollers, however, had important limitations. Their smooth, curvilinear surface applied broad compression over a large contact area, causing force to dissipate on the body rather than deliver targeted pressure into soft tissue. Their fully cylindrical shape also made them unstable, reducing their effectiveness for controlled soft tissue mobilization, core strengthening, and balance-training exercises. At the time of Mr. Dye’s

inventions, no roller existed with a core-overlay-projection integrated architecture of suitable materials and characteristics to enable any projection to extend into soft tissue.

30. At the time of Mr. Dye's invention, the state of the art counseled against using a foam roller with projections configured to extend into soft tissue. Foam rollers were generally smooth-surfaced devices, and adding projections capable of penetrating or extending into soft tissue raised significant safety concerns because such projections could injure sensitive anatomical structures, including the spine, spinous processes, head, neck, and lumbosacral soft-tissue structures. As a physical therapist, Mr. Dye recognized that a therapeutic roller with projections could be safe and effective only if the projections, materials, density, dimensions, and overall device structure were carefully designed to reach soft tissue without causing injury. His invention addressed those concerns by providing a roller structure with projections configured to extend into soft tissue while remaining safe and usable for therapeutic application.

31. Mr. Dye's invention departed from the prevailing understanding in the field. At the time, the exercise science community did not yet fully understand the therapeutic benefits and mechanisms of using a roller with projections capable of extending into soft tissue to enhance soft-tissue mobilization, strength, flexibility, balance, core strength, and overall mobility.

32. Industry expert Bradley Wilson has explained that, prior to and leading up to the invention, the exercise science community did not fully appreciate the relationship between fascia, stability, and quality of movement.[2] Nor did persons of ordinary skill understand how to therapeutically reach and influence fascial structures using a massage roller. Smooth rollers, because of their large contact surface area, tended to compress tissue broadly rather than target

---

[2] Exhibit 85, March 23, 2021 Declaration of Bradley Wilson, at ¶ 18, Reexamination Control No. 90/014,614.

localized soft-tissue restrictions. Without the knowledge supplied by Mr. Dye's invention, a person of ordinary skill would not have known to use projections on a roller configured to extend into soft tissue in the manner claimed.

33. Mr. Wilson further explained that Mr. Dye's invention provided users a new ability to reach and target tight or knotted areas of soft tissue throughout the body and to stimulate a neuromuscular response.[3] This was accomplished through a comprehensive roller structure having projections configured to extend into soft tissue while maintaining the safety and usability necessary for therapeutic use.

34. Drawing on his combined expertise in physical therapy and massage therapy, Mr. Dye invented an integrated core-overlay-projection roller designed to deliver targeted soft tissue treatment without requiring a clinician's direct manual intervention. This integrated architecture includes: a cylindrically shaped core made from closed cell foam, rubber, or plastic; an overlay made from the same classes of materials surrounding the core; and a plurality of projections configured to extend into soft tissue of a user.

35. In that integrated architecture, each component plays a necessary role. The core provides structural support and resists compression under the user's body weight. The overlay surrounds the core and supports the projections. The projections extend outward from the overlay and are designed to extend into soft tissue. Mr. Dye selected closed cell foam, rubber, and plastic for the core, overlay, and projections because those materials are durable, lightweight, hygienic, easier to clean, resistant to cracking, splitting, and splintering, and capable of supporting focal pressure into soft tissue while remaining safe for users. The claimed soft-tissue functionality

[3] Exhibit 85, March 23, 2021 Declaration of Bradley Wilson, at ¶ 17, Reexamination Control No. 90/014,614.

therefore depends on both the device's integrated structure and the physical characteristics of the projections.

36. Those projection characteristics include material, density, shape, and height. The material choices described above allow the projections to support focal pressure while remaining safe for the user. The projections must also have sufficient height to reach the region where soft tissue exists below the skin and subcutaneous fat, sufficient density to withstand user-applied pressure without collapsing, and shapes that permit focused extension into soft tissue. During reexamination, the PTAB confirmed that the "configured to extend into soft tissue" limitation accounts for those physical characteristics - material, density, shape, and height. The claimed inventions therefore depend on the core, overlay, and projections working together as an integrated structure to achieve the claimed soft-tissue extension.

37. The Asserted Patents claim devices with projections configured to extend into soft tissue, and the claims are not limited to a single projection pattern or surface appearance. Consistent with that claim scope, the specifications disclose multiple projection arrangements, including arrangements practiced by the Accused Products. In the figure from the Asserted Patents shown below, the projections extend circumferentially around the roller:

**Fig. 1: Exemplary circumferential projection arrangement disclosed in the Asserted Patents[4]**




FIG. 8E

38. The specifications also disclose projection arrangements in which projections are distributed along the roller's longitudinal axis or length. Representative examples from the Asserted Patents are shown below:

**Fig. 2. Exemplary longitudinal or distributed projection arrangement disclosed in the Asserted Patents[5]**




FIG. 6




FIG. 7

4 *See*, *e.g.*, Ex. 2, '112 Patent at Fig. 8E.
5 *See*, *e.g.*, Ex. 2, '112 Patent at Figs. 6, 7, 9A.

FIG. 9A




39. These figures illustrate that the patented inventions are not limited to a single projection pattern. The asserted claims cover the claimed core-overlay-projection architecture where the projections are configured to extend into soft tissue, whether the projections are arranged circumferentially, longitudinally, or in distributed patterns. Chirp's Accused Products use these same categories of projection arrangements while practicing the claimed core-overlay-projection architecture.

40. To date, Mr. Dye has been issued twelve United States utility patents, including the six Asserted Patents that he assigned to Performance Solutions. These patents and related applications are entitled "Therapeutic, Fitness, and Sports Enhancement Device" and reflect years of continued clinical insight and innovation.

**B. Performance Solutions' Commercialization and Licensing Program**

41. In 2010, Mr. Dye formed Performance Solutions with co-partners Colin Peddie and Allen Margulis and assigned to the company all rights, title, and interest in his patents.

42. Performance Solutions initially commercialized Mr. Dye's technology through its own proprietary, one-piece projection-based foam roller brand, sold under the name "Thera-Roll™."

43. Upon its introduction, Thera-Roll™ offered something different: a projection-based foam roller designed to extend into soft tissue, enhance mobilization of soft tissue, and optimize core strength and balance training.

44. Thera-Roll™ quickly gained market attention despite entering an established foam roller market. Performance Solutions' merchandise sales grew from approximately $101,000 in 2010 to approximately $560,000 by 2013, with a staff of only three employees.

45. As Thera-Roll™ gained traction, other companies began selling projection-based foam rollers using Performance Solutions' patented technology without authorization. Those unauthorized products eroded Performance Solutions' direct product sales, which declined to approximately $333,000 in 2014 and approximately $394,000 in 2015.

46. Beginning in approximately 2016, Performance Solutions reassessed its business model in light of the growing number of companies selling projection-based foam rollers. At that time, Performance Solutions was operating as a small business responsible for designing, manufacturing, distributing, and selling Thera-Roll™. It also was evaluating the potential for licensing its patented technology to others. It had already entered into one license agreement in 2014 with Venture Products.

47. Recognizing that market demand for Mr. Dye's technology had outpaced the company's direct-sales capacity, Performance Solutions transitioned from direct product sales to a licensing-focused business model. That transition allowed authorized licensees to scale the technology while compensating Performance Solutions for use of its patent rights.

48. Performance Solutions entered into its next license agreement with Implus Footcare, LLC on May 1, 2017, the effective date of its Patent License Agreement, and it has licensed additional authorized sellers since then.

49. Performance Solutions has built an active licensing program for its patent portfolio. Through that program, Performance Solutions has granted licenses to recognized industry participants and sellers of projection-based foam roller products, including 321Strong, Fitbeast, Implus, Halcyon, Oceanfoam, Zmarthumb, Shenzhen Ouruiyu Technology Co., Ltd., and others. These licenses demonstrate that companies operating in the foam roller market can and do obtain authorization to practice Performance Solutions' patent rights.

50. Performance Solutions' licensing program reflects substantial market adoption of products practicing its patented technology. A group of patent-practicing products for which sales information was available – including products sold by Performance Solutions' licensees, products sold by RumbleRoller (an infringing third party), and products sold by another seller with whom Performance Solutions resolved patent infringement claims – generated more than $241 million in estimated sales from Q4 2013 through partial Q3 2025.

51. That $241 million estimate is not a full measure of the market practicing Performance Solutions' patented technology. It does not include sales of other actual or potentially infringing products for which sales information was unavailable, and it does not include sales of the Accused Products. Sales of the Accused Products would add materially to the size of the market reflected by the $241 million estimate.

52. The commercial success of Performance Solutions' patented technology is also reflected in marketplace position and pricing. Projection-based foam rollers practicing Performance Solutions' patented technology hold prominent best-seller positions for foam rollers on Amazon and command a price premium of approximately 103% to 110% over conventional

smooth foam rollers.[6] That premium demonstrates market demand for the patented features.

53. Performance Solutions' licensing program is central to its business. It generates revenue from Performance Solutions' intellectual property, enables authorized competition in the therapeutic roller market, and protects licensees who have agreed to respect Performance Solutions' patent rights.

54. The market has repeatedly praised and promoted the same features claimed by the Asserted Patents: projections configured to extend into soft tissue, improved mobility, and balance and core-strength benefits. That market recognition appears in industry commentary, licensee statements, competitor marketing, and customer reviews.

55. For example, soon after its commercialization, fitness-products distributor AOK Health showcased Thera-Roll™ on the front page of its website and identified benefits of its projection-based design, including "stability of application," "compression force," "point pressure," "multiple soft tissue layers," "myofascial separation," and the ability to "penetrate[] soft tissue both across and along."[7] The following year, Body & Soul Magazine named Thera-Roll™ one of its Top Products of 2011.[8]

56. Licensee and competitor statements made the same point. Performance Solutions' licensee 321Strong promoted its licensed foam roller as using "patented technology to deliver a

---

[6] Exhibit 54, Amazon, *Best Sellers in Foam Rollers*, https://www.amazon.com/Best-Sellers-Foam-Rollers/zgbs/sporting-goods/3407871 (last visited Aug. 1, 2026).

[7] Exhibit 55, AOK Health, Internet Archive Wayback Machine (Jul. 25, 2010) https://web.archive.org/web/20100725195914/http://aokhealth.com:80/; Exhibit 56, AOK Health, *About AOK Health – Balance Training*, https://www.aokhealth.com/aboutaok-health-balance-training.asp (last visited Aug. 1, 2026).

[8] Exhibit 57, Damien Kelly, *Top Exercise Equipment for 2011*, Body + Soul Magazine (Jan. 16, 2011), https://www.bodyandsoul.com.au/fitness/workouts/top-exercise-equipment-for-2011/news-story/a5c038c08ed5b90f3617190e054086a7.

therapeutic self-massage comparable to a professional massage from a physical therapist."[9] Implus Footcare, owner of the TriggerPoint brand, publicly stated that by combining Performance Solutions' patent portfolio with TriggerPoint's intellectual property, it would "continue to be the innovation engine in the foam rolling space."[10] Even RumbleRoller, an unlicensed seller named in a Performance Solutions patent infringement action, promoted the benefits of projection-based rollers by stating that "bumps stimulate deeper layers of muscle, more completely relieve trigger points, and more effectively work around bony areas such as your spine, pelvis, and scapula.[11]

57. Customer reviews likewise show demand for the patented features. Customers praised projection-based rollers for getting into "soft tissue," working into "tight muscles," providing "deep tissue massage," helping with "myofascial release," and reaching areas that a smooth foam roller could not.[12] Those statements confirm that consumers were not merely buying foam rollers generally; they were buying products because of the projection-based soft-tissue functionality claimed by Performance Solutions' patents.

58. Public statements of Performance Solutions' licensee Oceanfoam, LLC further confirm the value of Performance Solutions' patent portfolio and the connection between the

---

9 Exhibit 58, Walmart, *321 STRONG 5-in-1 Exercise Foam Roller, Set Includes Hollow Core Massage Roller with End Caps, Muscle Stick, Stretching Strap, Double Lacrosse Peanut, Spikey Plantar Fasciitis Ball*, https://www.walmart.com/ip/321-STRONG-5-in-1-Exercise-Foam-Roller-Set-Includes-Hollow-Core-Massage-Roller-End-Caps-Muscle-Stick-Stretching-Strap-Double-Lacrosse-Peanut-Spikey-P/783950082 (last visited Aug. 1, 2026).

10 Exhibit 59, TriggerPoint, *TriggerPoint® Licenses Performance Solutions Patents*, American Spa (Jun. 21, 2017), https://www.americanspa.com/press-releases/triggerpoint-r-licenses-performance-solutions-patents.

11 Exhibit 60, Rumble Roller, *Frequently Asked Questions*, https://store-rumbleroller.myshopify.com/pages/faq (last visited Aug. 1, 2026).

12 Exhibit 61, Amazon, *Customer Reviews: 321 Strong Foam Roller — Medium Density Deep Tissue Massager for Muscle Massage and Myofascial Trigger Point Release, with 4K eBook*, https://www.amazon.com/portal/customer-reviews/B07FY5P24Q/ref=cm_cr_dp_d_show_all_top?_encoding=UTF8&ie=UTF8&reviewerType=all_reviews (last visited Aug. 1, 2026).

patented technology and commercial demand. After entering into a licensing agreement with Performance Solutions in October 2024, Oceanfoam issued a press release describing Performance Solutions as "an innovator for cutting-edge ideas in performance, wellness and training" and stating that Oceanfoam's Tidal Rollers "feature a unique and firm wave-like textured surface that provides an effective deep tissue massage for the body."[13] Oceanfoam's founder further stated: "We are excited to sign this licensing agreement with a company known for its extensive patent portfolio, allowing us to have a significant impact in the foam roller space."[14] Oceanfoam also stated that it was "excited to produce and offer" its Tidal Rollers "under Performance Solutions' patents.[15]

**C. Marketplace Enforcement, Federal Court Litigation, and USPTO Review of Performance Solutions' Patent Rights**

59. Performance Solutions' licensing program was built through years of efforts to enforce its patent rights and protect the market for authorized products. Performance Solutions began enforcing its patent rights in federal court as early as 2011 and began using Amazon's marketplace enforcement tools by approximately 2017. In 2018, Amazon placed Performance Solutions in a special patent-enforcement program that enabled Performance Solutions to seek expedited removal of products it identified as infringing its patents. Through that program and related marketplace enforcement efforts, Performance Solutions secured the removal of more than 60,000 unauthorized foam roller listings from Amazon alone and more than 120,000 unauthorized listings across online marketplaces.

---

13 Exhibit 62, *Oceanfoam Signs Licensing Agreement with Performance Solutions for its Tidal Rollers*, PR Newswire (Oct. 24, 2024), https://www.prnewswire.com/news-releases/oceanfoam-signs-licensing-agreement-with-performance-solutions-for-its-tidal-rollers-302284885.html.

14 *Id.*

15 *Id.*

60. Amazon's foam-roller category was particularly important because it was the online marketplace where many authorized, patent-marked licensed products were sold and where consumers searched for foam rollers. Performance Solutions' Amazon enforcement efforts cleared unauthorized projection-based foam roller listings from that category and helped create space for licensed products practicing Mr. Dye's patented technology. Chirp later moved the Accused Products into that same Amazon foam-roller category, where they competed directly against Performance Solutions' licensees while avoiding the licensing obligations those licensees accepted.

61. Performance Solutions' early district court enforcement included an action filed in April 2011 against Dick's Sporting Goods, Inc., for infringement of U.S. Patent No. 7,918,774, a patent related to the Asserted Patents. *Performance Solutions, LLC v. Dick's Sporting Goods, Inc.*, No. 1:11-cv-10700 (D. Mass.). Performance Solutions alleged that Dick's infringed by making, using, offering for sale, and/or selling the "Thrive Textured Flexibility Roller." The case settled in September 2011.

62. Beginning in January 2019, Performance Solutions' marketplace enforcement efforts gave rise to a series of federal court actions involving projection-based foam roller products. In November 2020, those disputes expanded into USPTO reexaminations challenging the same patent rights Performance Solutions were enforcing. Together, those proceedings confirm the strength of Performance Solutions' patent rights and show the steps Performance Solutions has taken to create and preserve an authorized market for licensees who pay for the right to practice Mr. Dye's patented technology.

63. The first of those federal court actions arose in January 2019, after Performance Solutions asserted its patent rights through Amazon's marketplace enforcement process.

ProSource, a seller of projection-based foam roller products, filed a declaratory judgment action against Mr. Dye and Performance Solutions challenging its infringement and the validity of the ’167 and ’112 Patents. *ProSource Discounts, Inc. v. Dye et al.*, No. 2:19-cv-00489 (C.D. Cal.). Performance Solutions counterclaimed for patent infringement. The parties litigated the case for nineteen months before resolving it by settlement.

64. A few months after the ProSource case settled, Ron Johnson Engineering, Inc. directly threatened Performance Solutions’ licensees and its patent-based licensing program. Through counsel, Ron Johnson Engineering sent a series of letters demanding that Performance Solutions’ licensees stop selling their licensed products and ultimately imposed a November 20, 2020 deadline to cease all sales. Performance Solutions filed suit on that deadline in *Performance Solutions, LLC v. Ron Johnson Engineering, Inc.*, No. 1:20-cv-00498 (D. Haw.), asserting infringement of the ’167, ’112, ’890, and ’260 Patents, along with tortious interference and related tort claims. In that litigation, Ron Johnson Engineering was represented by the same counsel who had represented ProSource in the earlier declaratory judgment action.

65. Performance Solutions also filed a related infringement action on November 20, 2020 against Sea Ties LLC, Ron Johnson Engineering’s licensee and commercial partner, for patent infringement, tortious interference, and related tort claims, captioned *Performance Solutions, LLC v. Sea Ties LLC*, No. 3:20-cv-00797 (M.D. La.). In that litigation, Sea Ties, like Ron Johnson Engineering, was represented by the same counsel who had represented ProSource in the earlier declaratory judgment action. The Ron Johnson Engineering and Sea Ties actions concerned the same accused foam roller products and the same conduct that threatened Performance Solutions’ licensing program and authorized sellers. By filing those actions, Performance Solutions sought to stop the sale of unlicensed products and protect licensees who

had paid for the right to sell authorized products practicing Performance Solutions' patents.

66. Those actions remain pending, but their progress was halted after Ron Johnson Engineering initiated a series of nine *ex parte* reexamination proceedings at the USPTO. Ron Johnson Engineering launched the first wave of reexaminations just three days after Performance Solutions filed its lawsuits against Ron Johnson Engineering and Sea Ties. Between November 23, 2020, and November 30, 2020, Ron Johnson Engineering filed four requests - one against each of the four then-issued Asserted Patents: the '167, '112, '890, and '260 Patents. Those four requests challenged all 70 claims then existing across the four patents. Those first four requests challenged all 70 claims then existing across the four patents. During reexamination, additional claims were added, bringing the total number of challenged claims to 107. The PTAB confirmed the patentability of all 107 claims in what one district court later characterized as a "sweeping reversal."[16] Ron Johnson Engineering later filed five additional requests, bringing the total number of reexamination requests to nine. Ron Johnson Engineering also contacted Amazon seeking reinstatement of accused products that had been removed from the marketplace and cited the pending reexamination proceedings as a basis for reinstatement. Amazon permitted the accused products to be reinstated.

67. The initial reexamination requests shifted a substantial part of the dispute from district court and marketplace enforcement to the USPTO. After those requests were filed, the Ron Johnson Engineering and Sea Ties actions were stayed, delaying Performance Solutions' district court enforcement efforts and requiring Performance Solutions to defend the same patents in parallel USPTO proceedings while accused products remained in the marketplace.

---

16 Exhibit 63, *PowX Inc. v. Performance Solutions, LLC*, No. 24-CV-01389 (S.D.N.Y. June 14, 2024), at 10.

68. Performance Solutions successfully defended the challenged claims in the first four reexaminations. Across those proceedings, the Examiner withdrew her own rejections five times, and the PTAB separately reversed the Examiner in four additional appeal decisions.[17] Those nine favorable outcomes confirmed the patentability of all 107 challenged claims. The USPTO issued reexamination certificates for the ’167, ’260, ’890, and ’112 Patents in 2024, confirming all challenged claims.

69. The USPTO also resolved claim-construction issues relevant here: (1) construing “soft tissue” to mean muscle, fascia, tendon, and ligament located below subcutaneous fat; (2) confirming that projections are “configured to” extend into soft tissue when they are made or designed to do so; and (3) confirming that this inquiry considers the projections’ material, density, shape, and height.[18] Additional reexaminations remain pending, but the Asserted Patents remain enforceable, and no challenged claim has been cancelled.

70. Despite those successful outcomes, Ron Johnson Engineering continued filing additional serial reexamination requests challenging Performance Solutions’ patents. Indeed, Ron Johnson Engineering’s fifth request - its second request directed to the ’167 Patent - was denied under 35 U.S.C. § 325(d) because the USPTO found that the request relied on prior art and arguments that had already been presented to the Office. The continued filing of additional requests

---

17 Exhibit 64, *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003470, Reexamination Control No. 90/014,621 (P.T.A.B. Dec. 6, 2023) (“PTAB Decision for the ’167 Patent”); Exhibit 65, *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003471, Reexamination Control No. 90/014,620 (P.T.A.B. Dec. 6, 2023) (“PTAB Decision for the ’112 Patent”); Exhibit 66, *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003494, Reexamination Control No. 90/014,616 (P.T.A.B. Dec. 6, 2023) (“PTAB Decision for the ’890 Patent”); Exhibit 67, *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003493, Reexamination Control No. 90/014,614 (P.T.A.B. Dec. 6, 2023) (“PTAB Decision for the ’260 Patent”).

18 *See, e.g.,* Exhibit 65, PTAB Decision for the ’112 Patent, at 4–9.

has prolonged the USPTO phase of the dispute and caused the Ron Johnson Engineering and Sea Ties actions to remain stayed, further delaying Performance Solutions' ability to obtain district court relief. Additional reexaminations remain pending, but the Asserted Patents remain enforceable, and no challenged claim has been cancelled.

71. During this same period of enforcement and reexamination activity, Performance Solutions also faced additional declaratory judgment actions arising from its Amazon marketplace enforcement efforts. In *Beyond The Cloud Inc. v. Performance Solutions, LLC*, No. 1:21-cv-02979 (E.D.N.Y.), another accused seller in the projection-based foam roller market sought a declaratory judgment against Performance Solutions' entire foam roller patent portfolio, including the'167, '112, '890, and '260 Patents, after Performance Solutions asserted one of its patents through Amazon's marketplace enforcement process. That action was later dismissed pursuant to settlement.

72. In *Shenzhen Ouruiyu Technology Co., Ltd. v. Performance Solutions, LLC*, No. 4:24-cv-03366 (N.D. Cal.), Shenzhen Ouruiyu Technology Co., Ltd. filed a declaratory judgment action challenging the '112 Patent after Performance Solutions asserted its patent rights through Amazon's marketplace enforcement process. The action was dismissed pursuant to settlement, after which Shenzhen became a Performance Solutions licensee.

73. The *PowX* litigation is the clearest example of the strength of Performance Solutions' patent rights and the market harm caused when unlicensed sellers use the same patented technology in the same marketplace where authorized licensees compete. In *PowX Inc. v. Performance Solutions, LLC*, No. 24-CV-01389 (S.D.N.Y.), PowX filed a declaratory judgment action after Performance Solutions sought removal of PowX's accused foam roller products from Amazon. Due to PowX's filing, Amazon exercised its discretion to allow PowX to continue selling

the accused products on its marketplace. The accused PowX product shared the same core-overlay-projection structure as the Accused Products here and was sold in the same Amazon foam roller marketplace in which Chirp competes against Performance Solutions' licensed products. The *PowX* litigation involved four patents asserted in this action: the '112, '167, '890, and '260 Patents.

74. Performance Solutions moved for a preliminary injunction in the *PowX* litigation. Following full briefing, oral argument, and a two-day evidentiary hearing with live witness and expert testimony, the district court granted Performance Solutions' motion on June 14, 2024. The court found that every preliminary injunction factor – likelihood of success on the merits, irreparable harm, balance of hardships, and public interest – "tilts in favor of Performance Solutions."[19] The court further found that the accused product was "likely to infringe on at least one, and up to four" of the asserted patents at issue in that proceeding, and that PowX "failed to produce evidence that raises a 'substantial question' concerning either the patents' enforceability or validity."[20]

75. On March 3, 2026, the district court entered final judgment for Performance Solutions in the *PowX* litigation. The court found PowX liable on Performance Solutions' patent infringement claims, found PowX's infringement willful, declared the case exceptional, trebled damages, and awarded Performance Solutions more than $1.79 million in damages and attorneys' fees, with costs pending.[21] The court also found PowX liable for malicious prosecution. In calculating damages, the court credited Performance Solutions' licensing evidence and found that

---

19 Exhibit 63, *PowX Inc. v. Performance Solutions, LLC*, No. 24-CV-01389, at 13 (S.D.N.Y. June 14, 2024).

20 *Id.* at 14–15.

21 Exhibit 73, *PowX Inc. v. Performance Solutions, LLC*, No. 24-CV-01389, at 16–17, 27–29, 34 (S.D.N.Y. Mar. 3, 2026).

a 21% royalty rate was reasonable for the asserted patent rights.[22]

76. The USPTO reexaminations and *PowX* litigation confirmed the commercial significance of Performance Solutions' patented technology. In the reexamination proceedings, the USPTO did not merely receive Performance Solutions' secondary-considerations evidence; two different examiners independently credited that evidence as "compelling," including evidence that products practicing the patented technology achieved commercial success and that the success was tied to the claimed features. In the *PowX* litigation, the district court likewise credited Performance Solutions' licensing evidence, including effective royalty rates for the asserted patent rights ranging from 11% to 25% in determining that a 21% royalty rate was reasonable for the asserted patents. Those findings underscore the market value of Performance Solutions' patent rights: authorized sellers pay meaningful royalties to use the patented technology that Chirp uses without authorization.

77. The above proceedings show that Performance Solutions has not merely licensed its patents in the abstract. It has enforced and defended its patent rights to create and preserve an authorized market for products practicing Mr. Dye's patented technology, including in Amazon's foam-roller category. During the same period Performance Solutions was required to devote substantial resources to litigating the ProSource, Ron Johnson Engineering, Sea Ties, Beyond The Cloud, Shenzhen, and PowX actions, defending serial reexaminations, and pursuing Amazon marketplace enforcement, Chirp continued selling the Accused Products in that same marketplace and expanded its Accused Product lines. Chirp's unauthorized sale of the Accused Products therefore threatens the same patent rights, licensing program, and authorized market that Performance Solutions has repeatedly protected for its licensees.

22 *Id*. at 25–26.

## VI. DEFENDANT'S INFRINGEMENT

### A. Overview of the Elements of the Asserted Claims

78. The Asserted Patents claim therapeutic, fitness, and sports-enhancement devices built around an integrated core-overlay-projection architecture. Although the claim language varies across the Asserted Patents, the asserted independent claims generally require: a cylindrically shaped core made of closed-cell foam, rubber, or plastic; an overlay made of closed-cell foam, rubber, or plastic surrounding or positioned about the core; and projections extending from the overlay that are configured to extend into soft tissue of a user. Certain asserted claims further recite, among other things, that the device is a two-piece or stand-alone device, that the overlay completely or circumferentially surrounds the core, that the core has a diameter of about 3 inches to about 15 inches, that the projections are perpendicular to the longitudinal axis, or that the device has a lumen.

79. Claim 1 of the '260 Patent is representative of the core-overlay-projection architecture claimed across the Asserted Patents. Claim 1 recites:

> A two piece therapeutic, fitness, and sports enhancement device consisting of:
>
> a first piece including an entirely cylindrically shaped core made of closed cell foam, plastic, or rubber material and having a diameter of about 3 inches to about 15 inches; and
>
> a second piece including an overlay about the cylindrically shaped core, the overlay made of closed cell foam, plastic, or rubber material, including a plurality of shaped projections extending from the overlay, each of the plurality of shaped projections configured to extend into soft tissue of a user to enhance mobilization of soft tissue and optimize body core strength and balance training.

80. Chirp infringes the Asserted Patents by making, using, offering to sell, selling, and/or importing projection-based foam rollers that meet those claim limitations. Performance Solutions confirmed that the Accused Products meet the asserted claim elements through product inspection, disassembly, material analysis, dimensional measurement, density measurement, and visual comparison. The infringement charts attached as exhibits to this Complaint provide product-specific, element-by-element mappings for each Accused Product and each Asserted Patent. The images and summaries below show how the principal accused product families infringe, including how they satisfy the representative claim elements recited above and additional claim-specific limitations such as core diameter, overlay configuration, projection shape, projection height, projection orientation, and lumen structure.

**B. Infringement of the Wheel+ Products**

81. The Wheel+ line includes Accused Products in four sizes: 12-inch, 10-inch, 6-inch, and 4-inch. These products use the same basic core-overlay-projection architecture claimed by the Asserted Patents. Each includes a cylindrically shaped ABS plastic core, a closed-cell EVA foam overlay surrounding the core, and elevated circumferential projections on both sides of a central spinal channel.

**Fig. 3. Chirp Wheel+ Accused Products**




***Wheel+ 12"***



***Wheel+ 10"***




***Wheel+ 6"***



***Wheel+ 4"***

82. Each Wheel+ product contains a separate core made of ABS plastic and a separate overlay made of closed-cell EVA foam, as confirmed by inspection and material analysis. These structures satisfy the representative claim limitations requiring a "first piece including an entirely cylindrically shaped core" made of plastic and a "second piece including an overlay" made of closed-cell foam, plastic, or rubber material. The images below show the overlay separated from the core to illustrate that each forms a separate component:

**Fig. 4. Chirp Wheel+ core and overlay**




| *Wheel+ 12”* | *Wheel+ 10”* |
|---|---|




| *Wheel+ 6”* | *Wheel+ 4”* |
|---|---|

83. The core of each Wheel+ product is entirely cylindrically shaped, satisfying the representative claim limitation requiring “an entirely cylindrically shaped core.” The images below have been digitally enhanced[23] to illustrate the cylindrical shape of the core:

[23] As used in this Complaint, the term “digital enhancement” refers only to the addition of color, labels, and/or lines to identify and illustrate the relevant claim elements. The underlying product images have not otherwise been altered.

**Fig. 5. Chirp Wheel+ cylindrically shaped ABS plastic core**



***Wheel+ 12"***



***Wheel+ 10"***



***Wheel+ 6"***



***Wheel+ 4"***

84. Measurements of each accused Wheel+ product confirm that the core falls within the claimed diameter range of "about 3 inches to about 15 inches," as shown below:

**Fig. 6. Chirp Wheel+ core diameter**



*Wheel+ 12”*



*Wheel+ 10”*



*Wheel+ 6”*



*Wheel+ 4”*

85. Each Wheel+ product includes curved projections circumferentially elevated on the overlay and located on both sides of the spinal channel. These projections satisfy the representative claim limitation requiring “a plurality of shaped projections extending from the overlay,” with each projection “configured to extend into soft tissue of a user.” The images below have been digitally enhanced to illustrate the projections:

**Fig. 7. Chirp Wheel+ projections**




*Wheel+ 12"*




*Wheel+ 10"*




*Wheel+ 6"*




*Wheel+ 4"*

86. The PTAB's claim constructions provide the framework for evaluating whether the Accused Products' projections are "configured to extend into soft tissue" based on consideration of the projections' material, density, shape, and height. Performance Solutions therefore measured and analyzed those characteristics in the Chirp Wheel+ products. Performance Solutions' analysis confirms that the Wheel+ projections are configured to extend into soft tissue based on their

material, shape, density, and height, as shown in the table below:

**Fig. 8. Chirp Wheel+ projection analysis**

| **Product** | **Projection characteristics** |
|---|---|
| **Wheel+ 12”** | ***Description***: Elevated circumferential projections on both sides of the central spinal channel<br>***Material***: Closed cell, EVA foam<br>***Shape***: Curved<br>***Density***: 3.3 lbs/ft$^3$<br>***Height***: 0.23 inch (shown below)<br> |
| **Wheel+ 10”** | ***Description***: Elevated circumferential projections on both sides of the central spinal channel<br>***Material***: Closed cell, EVA foam<br>***Shape***: Curved<br>***Density***: 3.5 lbs/ft$^3$<br>***Height***: 0.25 inch (shown below)<br> |
| **Wheel+ 6”** | ***Description:*** Elevated circumferential projections on both sides of the central spinal channel<br>***Material***: Closed cell, EVA foam<br>***Shape***: Curved<br>***Density***: 3.2 lbs/ft$^3$ |

| | | |
|---|---|---|
| | ***Height***: | 0.25 inch (shown below) |
| |   | |
| **Wheel+ 4”** | ***Description:*** | Elevated circumferential projections on both sides of the central spinal channel |
| | ***Material***: | Closed cell, EVA foam |
| | ***Shape***: | Curved |
| | ***Density***: | 3.4 lbs/ft$^3$ |
| | ***Height***: | 0.23 inch (shown below) |
| |   | |

87. Chirp’s own marketing confirms what Performance Solutions’ inspection and measurements show: the Wheel+ projections are designed to extend into soft tissue, not merely decorate the product surface. That marketing further confirms that the Wheel+ products satisfy the representative claim limitation requiring projections “configured to extend into soft tissue of a user.” Chirp promotes the Wheel+ projections as features that “dig in deep to sore muscles,” “penetrate deep into your muscles,” and “dig deep while protecting your spine.”

| **Figure 9: Representative Chirp advertisements regarding the Wheel+ projections extending into soft tissue** | |
| --- | --- |
| **Marketing Excerpt 1**[24] | **The Spinal Canal**<br>To protect your spine from injury and unnecessary pressure, we created the patent-pending spinal canal. This allows you to dig in deep to sore muscles while keeping your spine safe. |
| **Marketing Excerpt 2**[25] | The unique wheel shape penetrates deep into your muscles, breaking up knots and tension points with the efficiency of a professional massage. |
| **Marketing Excerpt 3**[26] | <br> |

88. These statements are not incidental marketing language. They describe the same soft-tissue-extension configuration claimed by the Asserted Patents and confirmed by Performance Solutions' inspection, measurements, and material analysis. Taken together, the Wheel+ products'

---

24 Exhibit 68, Chirp, *Chirp Wheel+ 3-Pack*, https://gochirp.com/products/chirp-wheel-3-pack (last visited Aug. 1, 2026).

25 Exhibit 69, Amazon, *Chirp Wheel+ Foam Roller, Back & Neck Pain Relief, Mint 12-Inch*, https://www.amazon.com/dp/B07TMRP6M6/ref=sp_asa_clp?th=1 (last visited Aug. 1, 2026).

26 Exhibit 68, Chirp, *Chirp Wheel+ 3-Pack*, https://gochirp.com/products/chirp-wheel-3-pack (last visited Aug. 1, 2026).

core-overlay-projection structure, the measured material, density, height, shape, and arrangement of the projections, and Chirp's own marketing confirm that the Wheel+ products use projections "configured to extend into soft tissue of a user."

89. The Wheel+ products also satisfy the claim-specific limitations that vary across the Asserted Patents. For example, Claim 14 of the '112 Patent recites a lumen extending through the core. The Wheel+ products meet this claim element as shown in the images below:

**Fig. 10. Chirp Wheel+ core having a lumen**




***Wheel+ 12"***




***Wheel+ 10"***




***Wheel+ 6"***




***Wheel+ 4"***

90. As another example, Claim 4 of the '571 Patent recites projections that "extend perpendicular to a longitudinal axis of the overlay." The Wheel+ products meet this claim element as shown in the digitally enhanced images below:

**Fig. 11. Chirp Wheel+ projections extending perpendicular to a longitudinal axis of the overlay**




*Wheel+ 12”*




*Wheel+ 10”*




*Wheel+ 6”*




*Wheel+ 4”*

91. The infringement claim charts attached to this Complaint as Exhibits 7-30 provide the detailed element-by-element infringement analysis on a claim-by-claim basis for each Wheel+ product. Those charts are product-specific, showing how each Wheel+ product meets the asserted

claim limitations, including limitations concerning the core, overlay, projection configuration accounting for its material, shape, density, and height, and any additional limitations recited in the asserted claims. The infringement claim charts are incorporated by reference as if fully set forth herein. Performance Solutions reserves the right to supplement its infringement claim charts and assert additional infringement theories.

**C. Infringement of the Wheel XL and Wheel Pro Products**

92. The Wheel XL and Wheel Pro products infringe for the same reasons as the Wheel+ products. Like the Wheel+ products, each includes a separate ABS plastic core, a separate closed-cell EVA foam overlay about the core, and elevated circumferential projections extending from the overlay on both sides of a central spinal channel. Those components meet the same representative claim limitations discussed above for the Wheel+ products, including a "first piece including an entirely cylindrically shaped core" made of plastic and a "second piece including an overlay" made of closed-cell foam, plastic, or rubber material, with a "plurality of shaped projections extending from the overlay" and configured to extend into soft tissue of a user.

93. The Wheel XL and Wheel Pro products are shown below:

**Fig. 12. Chirp Wheel XL and Wheel Pro Accused Products**



***Wheel XL***



***Wheel Pro***

94. The Wheel XL modifies the standard Wheel+ design by increasing the product width, adding thicker compression padding, and using a shallower spinal-channel groove. Those differences do not alter the claimed core, overlay, or elevated circumferential projections, and do not avoid infringement. The Wheel Pro likewise uses the same core-overlay-projection architecture and adds a motorized vibration feature. That added motorized feature does not alter the claimed core, overlay, or projections, and does not avoid infringement.

95. The infringement claim charts attached to this Complaint as Exhibits 31-42 provide the product-specific, element-by-element infringement analysis for the Wheel XL and Wheel Pro products. The infringement claim charts are incorporated by reference as if fully set forth herein. Performance Solutions reserves the right to supplement its infringement claim charts and assert additional infringement theories.

96. Because the Wheel XL and Wheel Pro products use the same basic core-overlay-projection architecture described above, Performance Solutions does not repeat here the same core, overlay, lumen, and projection-orientation analysis already addressed for the Wheel+ products. The product-specific infringement claim charts attached as Exhibits 31-42 provide the full element-by-element analysis for the Wheel XL and Wheel Pro products. The table below focuses on the product-specific projection characteristics that differ for the Wheel XL and Wheel Pro products while confirming that their projections still meet the asserted claim limitations requiring shaped projections extending from the overlay and configured to extend into soft tissue of a user.

**Fig. 13. Chirp Wheel XL and Wheel Pro projection analysis**

| **Product** | **Projection characteristics** |
|---|---|
| **Wheel XL** | ***Description***: Elevated circumferential projections on both sides of the central spinal channel<br>***Material***: Closed cell, EVA foam<br>***Shape***: Curved<br>***Density***: 6.7 lbs/ft$^3$<br>***Height***: 0.19 inch (shown below)<br> |
| **Wheel Pro** | ***Description***: Elevated circumferential projections on both sides of the central spinal channel<br>***Material***: Closed cell, EVA foam<br>***Shape***: Curved<br>***Density***: 6.8 lbs/ft$^3$<br>***Height***: 0.25 inch (shown below)<br> |

97. The Wheel XL and Wheel Pro products therefore do not depart from the infringing architecture used in the Wheel+ products. They retain the same claimed core, overlay, and elevated circumferential projections configured to extend into soft tissue. The Wheel XL's comfort-oriented

changes and the Wheel Pro's motorized vibration feature are additional features that do not remove or alter the claimed elements and do not avoid infringement.

**D. Infringement of the Wheel XR Products**

98. The Wheel XR products infringe the Asserted Patents in the same fundamental manner as the Wheel+ products, while adding distributed raised projections across the overlay surface. For purposes of illustrating how the Wheel XR products meet the asserted claim limitations, Claim 1 of the '571 Patent is used below as a representative claim. Claim 1 recites:

> A therapeutic, fitness and sports enhancement device comprising:
>
> a cylindrically shaped core having a first end and a second end and made of at least one of closed cell foam, rubber or plastic;
>
> an overlay completely circumferentially surrounding the core from about the first end to about the second end, made of at least one of closed cell foam, rubber or plastic; and
>
> the overlay including a plurality of projections configured to extend into tissue below subcutaneous fat of a user while under pressure of the user's body.

99. Each Wheel XR product includes a cylindrically shaped ABS plastic core, a closed-cell EVA foam overlay completely circumferentially surrounding the core, elevated circumferential projections on both sides of a central spinal channel, and multiple discrete raised projections extending from the overlay. Those components satisfy the representative claim limitations requiring a "cylindrically shaped core," an "overlay completely circumferentially surrounding the core," and "a plurality of projections configured to extend into tissue below subcutaneous fat of a user while under pressure of the user's body."

100. The Wheel XR line includes Accused Products in three sizes: 10-inch, 6-inch, and

4-inch. The Wheel XR products are shown below:

| **Fig. 14. Chirp Wheel XR Accused Products** | |
|---|---|
|  |  |
| ***Wheel XR 10”*** | ***Wheel XR 6”*** |
|  | |
| ***Wheel XR 4”*** | |

101. Each Wheel XR product contains a separate core and overlay. Inspection and material analysis confirm that the core is made of ABS plastic and that the overlay is made of closed-cell EVA foam. These structures satisfy the representative claim limitations requiring a core made of at least one of closed cell foam, rubber, or plastic, and an overlay made of at least one of closed cell foam, rubber, or plastic. The images below show the overlay separated from the core:

**Fig. 15. Chirp Wheel XR core and overlay**




***Wheel XR 10"***




***Wheel XR 6"***




***Wheel XR 4"***

102. The core of each Wheel XR product is cylindrically shaped, satisfying the representative claim limitation requiring a "cylindrically shaped core." The images below have been digitally enhanced to show the cylindrical shape of the core:

| **Fig. 16. Chirp Wheel XR cylindrically shaped ABS plastic core** | |
|---|---|
|  |  |
| ***Wheel XR 10"*** | ***Wheel XR 6"*** |
|  | |
| ***Wheel XR 4"*** | |

103. Each Wheel XR product includes raised projections extending from the overlay. The Wheel XR 6-inch and 4-inch products include elevated circumferential projections on both sides of the spinal channel, along with additional discrete projections distributed along the length of the product and circumferentially around the overlay surface. The Wheel XR 10-inch product includes a spinal channel and discrete projections distributed along the length of the product and circumferentially around the overlay surface. These structures satisfy the representative claim

limitation requiring the overlay to include "a plurality of projections configured to extend into tissue below subcutaneous fat of a user while under pressure of the user's body." The images below have been digitally enhanced to illustrate the projections. The letter labels identify different types of projections in each accused Wheel XR product.

**Fig. 17. Chirp Wheel XR projections**




*Wheel XR 10”*




*Wheel XR 6”*




***Wheel XR 4”***

104. The infringement analysis below applies the same claim-construction and technical framework that Performance Solutions proposed during reexamination and that the USPTO accepted in resolving those proceedings. The Examiner recognized that “soft tissue” includes muscles, fascia, tendons, and ligaments, and the PTAB reversed the Examiner’s written-description rejection of a claim expressly reciting “tissue below subcutaneous fat,” explaining that a person of ordinary skill in the art would have understand the inventor’s invention to be in view of the Specification. The PTAB also did not disturb Performance Solutions’ proposed interpretations of “configured to” and “extend into soft tissue,” and confirmed that whether projections are configured to extend into soft tissue depends on the projections’ material, density,

size, and shape. Performance Solutions measured and analyzed those characteristics in the Wheel XR products. That analysis confirms that the Wheel XR projections are configured to extend into a user's soft tissue, including tissue below subcutaneous fat, when used under the pressure of the user's body, as shown below:

**Fig. 18. Chirp Wheel XR projection analysis**

| **Product** | **Projection characteristics** | |
|---|---|---|
| **Wheel XR 10"** | ***Description***: | Elevated projections distributed across the length of the product and around it |
| | ***Material***: | Closed cell, EVA foam |
| | ***Shape***: | Triangle |
| | ***Density***: | 9.2 lbs/ft$^3$ (Projection "A" in Fig. 17) |
| | | 10.3 lbs/ft$^3$ (Projection "B" in Fig. 17) |
| | ***Height***: | 0.56 inch (Projection "A" in Fig. 17) |
| | | 0.27 inch relative to the spinal canal and 0.44 inch relative to the adjacent space (Projection "B" in Fig. 17) |
| | | (shown below) |
| |   | |
| **Wheel XR 6"** | ***Description***: | Elevated projections distributed across the length of the product and around it |
| | ***Material***: | Closed cell, EVA foam |
| | ***Shape***: | Curved |
| | ***Density***: | 7.0 lbs/ft$^3$ (Projection "A" in Fig. 17) |
| | | 7.0 lbs/ft$^3$ (Projection "B" in Fig. 17)[27] |
| | | 9.3 lbs/ft$^3$ (Projection "C" in Fig. 17) |

[27] The density of the (B) 3/4" diameter projection is estimated based on the density of the (A) 11/8" diameter projections.

| | | |
|---|---|---|
| | ***Height***: | 0.63 inch (Projection “A” in Fig. 17)<br>0.52 inch (Projection “B” in Fig. 17)<br>0.16 inch (Projection “C” in Fig. 17)<br>(shown below) |
| | |     |
| **Wheel XR 4”** | ***Description:*** | Elevated projections distributed across the length of the product and around it |
| | ***Material***: | Closed cell, EVA foam |
| | ***Shape***: | Curved |
| | ***Density***: | 9.3 lbs/$ft^3$ (for the outermost layer), 16 lbs/$ft^3$ (for the exterior layer of the insert), and 12.9 lbs/$ft^3$ (for the interior layer of the insert) (Projection “A” in Fig. 17)<br>9.3 lbs/$ft^3$ (for the outermost layer), 16 lbs/$ft^3$ (for the exterior layer of the insert), and 12.9 lbs/$ft^3$ (for the interior layer of the insert) (Projection “B” in Fig. 17)[28]<br>9.3 lbs/$ft^3$ (Projection “C” in Fig. 17) |
| | ***Height***: | 0.73 inch (Projection “A” in Fig. 17)<br>0.74 inch[29] (Projection “B” in Fig. 17) |

[28] The densities of the (B) angled projection inserts are estimated based on the densities of the (A) hoop projection inserts.

[29] The height of (B) angled projection is measured relative to the base of the spinal canal, which is the sum of 0.55 inch (height relative to the surface of projection (C) elevated circumferential projection) and 0.19 inch (the height of projection (C) elevated circumferential projection).

0.19 inch (Projection "C" in Fig. 17) (shown below)




105. These measurements confirm that the Wheel XR projections are not merely decorative surface features. Across the Wheel XR products, the projections are made of closed-cell EVA foam, have defined curved or triangular shapes, have measured densities ranging from 7.0 lbs/ft³ to 10.3 lbs/ft³, with the Wheel XR 4" having interior supporting projection pieces up to 16 lbs/ft³, and have measured heights extending up to 0.73 inch. Under the PTAB's claim constructions, those material, density, shape, and height characteristics confirm that the Wheel XR products satisfy the representative claim limitation requiring projections configured to extend into

tissue below subcutaneous fat of a user while under pressure of the user's body."

106. Chirp's own marketing confirms what Performance Solutions' inspection and measurements show: the Wheel XR projections are designed to extend into tissue below subcutaneous fat, including muscle and fascia. Chirp promotes the Wheel XR projections as features that "dig in deep to sore muscles" and "penetrate[] tight muscles to release knots and tension."

| **Figure 19: Representative Chirp advertisements regarding the Wheel XR projections extend into soft tissue** | |
|---|---|
| **Marketing Excerpt 1**[30] |   |
| **Marketing Excerpt 2**[31] |   |

30 Exhibit 70, Chirp, *Chirp Wheel XR 3-Pack*, https://gochirp.com/products/chirp-wheel-xr-3-pack (last visited Aug. 1, 2026).

31 Exhibit 71, Amazon, *Chirp Wheel XR 10" Acupressure Back Roller for Muscle Relief, Mint*, https://www.amazon.com/Chirp-Wheel-XR-Acupressure-Back-Relief/dp/B0CDN6THZJ/ref=sr_1_1 (last visited Aug. 1, 2026).

| | |
|---|---|
| **Marketing Excerpt 3**[32] |   |
| **Marketing Excerpt 4**[33] | DEEP TISSUE PRESSURE RELIEF: The Chirp Wheel XR is built for muscle rollers deep tissue therapy, offering intense pressure that penetrates tight muscles to release knots and tension. Ideal for athletes or anyone seeking a deep massager for muscles that targets stiffness and restores flexibility. |

107. The infringement claim charts attached to this Complaint as Exhibits 43-53 provide the detailed element-by-element infringement analysis for each Wheel XR product. Those charts are product-specific, showing how each Wheel XR product meets the asserted claim limitations, including limitations concerning the core, overlay, projection configuration, projection material, projection shape, projection density, projection height, tissue-below-subcutaneous-fat limitation, lumen, projection orientation, and additional limitations recited in the asserted claims. The infringement claim charts are incorporated by reference as if fully set forth herein. Performance Solutions reserves the right to supplement its claim infringement charts and assert additional

---

32 *Id.*

33 Exhibit 72, Amazon, *Chirp Wheel XR 4" Neck Wheel for Headache and Tension Relief, Mint*, https://www.amazon.com/dp/B0CDN5Y6J4?th=1 (last visited Aug. 1, 2026).

infringement theories.

### E. Chirp Uses the Same Projection-Based Configurations as Authorized Licensees

108. Performance Solutions’ licensees have commercialized the patented inventions in multiple foam roller configurations. Those commercial configurations include products with one or more channels bordered by elevated circumferential projection surfaces and products with distributed projection patterns across the roller’s surface. The Accused Products use the same categories of projection arrangements.

109. Examples of licensed products practicing channel-and-circumferential projection arrangements include licensed foam roller products sold by Fitbeast and Implus (which owns the TriggerPoint brand), as shown below:

**Figure 20. Examples of licensed products with channel-and-circumferential projection arrangements**

|  |  |
|---|---|
| ***Fitbeast 12” Foam Roller*** | ***TriggerPoint 13” Foam Roller*** |

110. Chirp’s Wheel+ product line uses the same channel-and-circumferential projection arrangement, as shown in the examples below:

**Figure 21. Representative Accused Products with channel-and-circumferential projection arrangements**



*Chirp Wheel+ 10"*



*Chirp Wheel+ 4"*

111. Performance Solutions' licensees also sell licensed products with distributed projections across the roller surface. Examples include licensed products sold by Venture Products and 321Strong, as shown below:

**Figure 22. Examples of licensed products with distributed projection arrangements**



*Venture Products – Renew*



*321 Strong – Medium Density*

112. The Accused Products use the same distributed projection arrangements, as shown in the examples below:

**Figure 23. Representative Accused Products with distributed projection arrangements**



*Chirp Wheel XR 10"*



*Chirp Wheel XR 6"*

113. These comparisons show that the Accused Products are not merely generally similar to licensed foam rollers. They use the same types of projection arrangements that Performance Solutions' licensees practice under the Asserted Patents and that the Asserted Patents disclose as part of the claimed core-overlay-projection architecture.

114. Chirp's own comparative marketing confirms that it views Performance Solutions' licensed products as direct competitors in the same therapeutic roller market. In a Chirp promotional YouTube video, Chirp depicted and criticized a licensed 321Strong foam roller.[34] Chirp presented that competing licensed 321Strong roller as inferior by portraying it as flimsy and inadequate while presenting the Chirp Wheel+ as firmer and more effective for relieving pain. It even inserted an audible squeaky noise while digitizing the licensed 321Strong roller as wiggling. The video then promoted the accused Chirp Wheel+ as providing "full back-stretching, pain-reducing relief," described its "super thick, comfortable mat design" and "spinal canal," and stated that, because the user's spine "presses deeper into the mat," the muscles lining the vertebrae are

[34] Chirp, Roll Away Back Pain on the Chirp Wheel+, YouTube (Nov. 7, 2019), https://www.youtube.com/watch?v=vwiW3tIIszo (last visited July 28, 2026).

stretched "horizontally, as well as vertically." The video also included audible back-popping effects and user statements such as "I feel it," and promoted the Chirp Wheel+. Chirp's marketing thus confirms that Chirp positioned the Accused Products directly against Performance Solutions' licensed products and touted features relevant to the deep-tissue engagement and pain-reducing relief – the same functionality achieved using the patented inventions. This video to date has over 8.7 million views – adding to the damage that Chirp has caused.

### F. Chirp Sells the Same Types of Unauthorized Competing Products Performance Solutions Removed from Amazon

115. Performance Solutions' Amazon marketplace enforcement history shows how Chirp benefited from selling the same types of unauthorized competing products that Performance Solutions had worked to remove from the marketplace. Those removed listings included products using projection-based configurations comparable to Chirp's Accused Products, including channel-and-circumferential projection configurations comparable to the accused Chirp Wheel+ and Wheel XL products and distributed projection configurations comparable to the accused Chirp Wheel XR products.

116. Those removals protected Performance Solutions' licensees by clearing unauthorized products that competed directly with authorized, patent-marked products in Amazon's foam roller marketplace. As Performance Solutions removed comparable unlicensed products from Amazon, Chirp continued selling the Accused Products in that same marketplace without a license. Chirp therefore benefited from a marketplace increasingly populated by authorized licensed products and cleared of many unauthorized competitors, while avoiding the licensing obligations borne by authorized sellers.

117. The Accused Products use channel-and-circumferential projection configurations comparable to unauthorized foam roller products that Amazon removed following Performance

Solutions' patent-enforcement complaints. Representative examples are shown below:

| **Figure 24. Examples of rollers with circumferential projection arrangement removed from Amazon, compared to Chirp's Accused Product** | | |
|---|---|---|
| **Accused Product** | **Removed Products** | |
| **Chirp Wheel+ 10** | **HMT Spor Roller** | **Simgoing Roller** |
|  |  |  |

| **Figure 25. Additional examples of rollers with circumferential projection arrangement removed from Amazon, compared to Chirp's Accused Product** | | |
|---|---|---|
| **Accused Product** | **Removed Products** | |
| **Chirp Wheel+ 10** | **Socpuro Roller** | **iiWiiONCE Roller** |
|  |  |  |

118. The Accused Products also use distributed projection configurations comparable to unauthorized foam roller products that Amazon removed following Performance Solutions'

patent-enforcement complaints. Representative examples are shown below:

| **Figure 26. Examples of rollers with distributed projection arrangement removed from Amazon, compared to Chirp's Accused Product** | | |
|---|---|---|
| **Accused Product** | **Removed Products** | |
| **Chirp Wheel XR 10"** | **IFFANY Roller** | **SoulSync Workout Essentials Roller** |
|  |  |  |

119. These comparisons reinforce the same point shown by Performance Solutions' licensing program. Performance Solutions' licensees sell authorized products using patented projection-based configurations; Amazon removed unauthorized products using comparable configurations after Performance Solutions' patent infringement complaints; and Chirp continued selling Accused Products built around those same configurations without a license. Chirp's conduct is particularly harmful because it allowed Chirp to compete directly against licensed sellers in the marketplace Performance Solutions had worked to protect, while avoiding the patent rights those sellers paid to use.

120. Chirp was not an ordinary third-party Amazon seller that could be addressed through marketplace enforcement alone. By the time Chirp's infringement came into Performance Solutions' focus, Chirp was a substantial and entrenched seller, generating significant revenue from Accused Products sold on Amazon and through other major channels. Chirp's scale, market

position, and continued sale of multiple infringing product lines made marketplace takedowns inadequate and required this federal court action.

## VII. DEFENDANT'S MARKET REPOSITIONING, EXPANSION, AND HARM TO THE AUTHORIZED MARKET

121. The entity that became Chirp was originally formed in Washington State on August 6, 2014, under the name "Snappin Necks N Cashin Checks, LLC" by Tate Stock. That same entity later became Defendant through a series of name changes and conversions: it was renamed Plexus Yoga, LLC on August 5, 2015; registered "Chirp" as a d/b/a in Utah on June 21, 2019; converted into Chirp Innovation, Inc., a Delaware corporation, on September 30, 2024; and converted into Defendant Chirp Innovation, LLC, effective in Delaware on December 27, 2024. Those changes altered the entity's name or corporate form, but the same business sold projection-based foam roller products throughout the time period relevant hereto.

122. Chirp's entry into the relevant market began with projection-based foam roller products sold under the Plexus brand, initially as the Plexus Wheel+, and was later rebranded as the Chirp Wheel+ in June 2019.

123. By 2020, Chirp had become a substantial seller of projection-based foam roller products. On October 30, 2020, Chirp founder Tate Stock appeared on Season 12 of ABC's *Shark Tank*, where he disclosed that Chirp had sold more than one million units, projected $40 million in sales and $12 million in profit for 2020, and experienced approximately 400% year-over-year growth. Mr. Stock further disclosed that Chirp's three-pack of projection-based foam roller wheels sold for $99 with a cost of goods of $21.96, and that Chirp then offered wheels in 6-inch, 10-inch, and 12-inch sizes.

124. Chirp's growth was driven by its deliberate repositioning of projection-based foam roller products. Mr. Stock has repeatedly acknowledged that strategy. In a December 14, 2020

interview on The Startup Life podcast, Mr. Stock explained that Chirp "focused on the yoga market for the first two years of business," but then "switched the entire focus to back pain."[35] In a June 2024 podcast interview, Mr. Stock described the same transition even more directly: Chirp "kept the same exact product" but changed its marketing from "everything yoga to nothing yoga, all back pain relief."[36]

125. That repositioning changed Chirp's commercial trajectory. Mr. Stock stated that, before the shift, Chirp had made approximately $180,000 in its first two years.[37] After changing how it presented the same product, sales increased to "over $4 million in the next seven months."[38] Mr. Stock described that change as a "transition of market," moving from "a yoga prop to a back pain relief product."[39]

126. Chirp implemented that repositioning through its Amazon strategy. Beginning in approximately August 2019, Chirp retained MAG Elite/My Amazon Guy to support its Amazon business, including listing and search-engine optimization, advertising, brand content, and product-category placement.[40] A public case study describing MAG Elite/My Amazon Guy's work on Chirp's Amazon listings explained why Chirp targeted Amazon's foam roller category. Chirp's products had been categorized as yoga wheels, and Chirp was ranked #1 in that category,

---

35 Exhibit 74, Transcript of *The Startup Life* podcast, "Tate Stock: Creator of the Chirp Wheel" ("Startup Life Transcript"), at 5–6 (Dec. 14, 2020), https://podcasts.apple.com/us/podcast/tate-stock-creator-of-the-chirp-wheel/id1171309988?i=1000502322742.

36 Exhibit 75, Transcript of *The Story of a Brand* podcast, "Chirp - The World's Simplest Back Pain Relief" ("Story of a Brand Transcript"), at 5 (June 20, 2024), https://podcasts.apple.com/us/podcast/chirp-the-worlds-simplest-back-pain-relief/id1435740265?i=1000659636693.

37 *Id.*

38 *Id.*

39 *Id.*

40 Exhibit 76, MAG Elite, *Chirp Case Study* ("Chirp Case Study"), at 1, 3, https://magelite.agency/chirp-case-study/ (last visited July 10, 2026).

but the yoga-wheel category was "much smaller than the Foam Rollers category."[41] The case study explained that "[f]inding a new and bigger market was crucial" to supporting Chirp's sales growth, and that MAG Elite/My Amazon Guy therefore "decided to go against the grain and switch to the Foam Rollers category."[42]

127. Archived Amazon listings confirm that Chirp made that category shift. A November 30, 2020, archived Amazon listing placed the Chirp Wheel in Amazon's "Yoga" subcategory.[43] By November 9, 2021, however, an archived Amazon listing placed the Chirp Wheel in Amazon's "Foam Rollers" subcategory.[44] Chirp had moved the accused wheel-shaped products from Amazon's yoga category into the larger foam roller category.

128. That category shift mattered. The foam roller category was the same Amazon category where Performance Solutions' licensees sold authorized, patent-marked products practicing the Asserted Patents[45], and where Performance Solutions had substantially cleared

41 *Id*. at 3.
42 Exhibit 76, Chirp Case Study, at 4.
43 Exhibit 77, Amazon, *Plexus Chirp Wheel*, Internet Archive Wayback Machine (Nov. 30, 2020), https://web.archive.org/web/20201130210537/https://www.amazon.com/dp/B07TLP8DKCIref= cm_sw_r cp_api_i_bBPWFbG797H70.
44 Exhibit 78, Amazon, *Chirp Wheel+*, Internet Archive Wayback Machine (Nov. 9, 2021), web.archive.org/web/20211109182946/https://www.amazon.com/dp/B07TLP8DKCP coliid=INJYR0Y4IGJNC&colid=JASOXRMRE9EMpsc=1.
45 Exhibit 79, Amazon, *321 STRONG Foam Roller – Extra Firm High Density Deep Tissue Massager with Spinal Channel*, Internet Archive Wayback Machine (Nov. 29, 2020), https://web.archive.org/web/20201129055520/https://www.amazon.com/321-STRONG-Foam-Roller-cMassager/dp/B07T8HGWGS; *see, e.g.,* Exhibit 80, Amazon, *Krightlink 5-in-1 Foam Roller Set*, https://www.amazon.com/Krightlink-Massage-Density-Exercise-Resistance/dp/B0D4GZPX3T (last visited July 28, 2026); Exhibit 81, Amazon, *Oceanfoam Ripple Travel Foam Roller*, https://www.amazon.com/Oceanfoam-Mini-Travel-Foam-Roller/dp/B0D4SQW7ZJ (last visited July 28, 2026); Exhibit 82, Amazon, *Zmarthumb 15 inch High Density*, https://www.amazon.com/Zmarthumb-Massager-Massage-Myofascial-Exercise/dp/B0D9K43N95 (last visited July 28, 2026); Exhibit 83, Amazon, *FitBeast Back Roller*, https://www.amazon.com/FitBeast-Back-Roller-Stretcher-Stretching/dp/B0CJXV13K7 (last visited July 28, 2026).

unauthorized projection-based foam roller products through years of marketplace enforcement. By moving into that category, Chirp placed its unlicensed products directly alongside authorized licensee products in a marketplace Performance Solutions had spent years policing and protecting. MAG Elite/My Amazon Guy reported that, although Chirp lost its #1 rank badge when it moved from yoga wheels into the larger Foam Rollers category, Chirp saw a 20% increase in sales within a few weeks and later ranked #2 in the larger foam roller category.[46]

129. Chirp continued to grow and expand the Accused Product lines. The MAG Elite/My Amazon Guy case study reported that Chirp's Amazon sales grew from approximately $500,000 per year to $8 million, measured from Chirp's August 2019 engagement of MAG Elite/My Amazon Guy through 2021, with growth to date exceeding 519%.[47] In a June 20, 2024 podcast interview, Mr. Stock stated that Chirp had sold more than five million Chirp wheels and had expanded into major retail channels.[48]

130. Chirp expanded both the number of products within the Wheel+ line and the number of infringing product lines. On November 17, 2021, Chirp introduced the Chirp Wheel+ 4" product. On January 10, 2022, Chirp introduced the motorized Chirp Wheel Pro on Amazon. On November 22, 2022, Chirp introduced the Wheel XL on Amazon. On August 3, 2023, Chirp introduced the Wheel XR product line, including the Wheel XR 4", Wheel XR 6", and Wheel XR 10". These later products built on the same accused core-overlay-projection architecture, with the Wheel Pro adding motorized vibration, the Wheel XL adding comfort-oriented features, and the Wheel XR line adding multiple discrete raised projections to the EVA foam overlay.

131. Chirp currently sells the Accused Products in Amazon's foam-roller category, the

46 Exhibit 76, Chirp Case Study, at 4.
47 Exhibit 76, Chirp Case Study, at 5.
48 Exhibit 75, Story of a Brand Transcript, at 5, 14.

same marketplace category where Performance Solutions' licensees sell authorized, patent-marked products practicing the Asserted Patents. Chirp also sells the Accused Products through other major retail channels, including BestBuy.com, DicksSportingGoods.com, Target.com, Walmart.com, GoChirp.com, and brick-and-mortar stores. These are many of the same channels through which Performance Solutions' licensees sell authorized products. As a result, the Accused Products compete directly with licensed products for the same customers, search placements, product rankings, retail shelf space, and online purchasing decisions.

132. Chirp markets the Accused Products for the same therapeutic and fitness uses addressed by the Asserted Patents and by licensed products, including back-pain relief, muscle recovery, improved mobility, stretching, and targeted pressure. Chirp therefore does not sell the Accused Products as remote or incidental alternatives to Performance Solutions' licensed products. It sells them as competing therapeutic roller products directed to the same consumers, the same channels, and the same functional benefits.

133. Chirp's product expansion continued and increased its infringement of the Asserted Patents. Beginning with the Plexus Wheel+, which was later rebranded as the Chirp Wheel+, Chirp expanded the Accused Product family by adding the Wheel XL, Wheel Pro, and Wheel XR products, each with new sizes, new configurations, and new features, including the distributed raised projections of the Wheel XR line. But the infringing architecture remained the same: each Accused Product line retained a cylindrically shaped ABS plastic core, a closed-cell foam overlay, and projections configured to extend into soft tissue. That is the same core-overlay-projection architecture at issue in Performance Solutions' infringement claims.

134. Chirp's sales channels, marketing, and product expansion confirm the harm to the authorized market for Performance Solutions' patented technology. Chirp sells unlicensed,

infringing products in the same commercial channels, for the same uses, and against the same authorized, patent-marked products sold by Performance Solutions' licensees, while avoiding the licensing obligations borne by those licensees.

135. The following chronology summarizes the launch of the Accused Product lines and their principal predecessors:

**Fig. 27. Chirp's Unauthorized Expansion into the Licensed Amazon Foam Roller Market**




## VIII. DEFENDANT'S NOTICE AND WILLFULNESS

### A. Patent Marking and Constructive Notice

136. Performance Solutions and its licensees have complied, and continue to comply, with the marking requirements of 35 U.S.C. § 287(a). Each Performance Solutions licensee is required to mark its licensed products with the applicable Performance Solutions patent numbers in compliance with 35 U.S.C. § 287(a). Since executing their respective license agreements,

Performance Solutions' licensees have made, offered for sale, sold, and imported into the United States patented articles practicing one or more claims of the Asserted Patents, and have marked those articles in accordance with the terms of the license agreements, their marking obligations, and 35 U.S.C. § 287(a). That marking has been substantially consistent and continuous from the effective date of each license agreement to the present.

137. Performance Solutions' licensees comply with the marking statute in either or both of the following ways. Certain licensees identify the applicable Performance Solutions patents directly on the packaging of each licensed product. Certain licensees identify Performance Solutions' website by stating: "Patents: https://theraroll.com/IP." That website identifies each licensed product by product name, ASIN, and/or UPC, and lists the Performance Solutions patents that cover each such product. Some licensees include both the applicable patent numbers and a reference to Performance Solutions' website on their product packaging, as shown in the following example:




138. The following licensee-specific examples further illustrate Performance Solutions' and its licensees' consistent and continuous compliance with 35 U.S.C. § 287(a).

139. *Venture Products, LLC.* Venture Products entered into a Patent License Agreement with Performance Solutions effective March 3, 2014, and began marking its licensed products

thereafter. Venture Products marks the product packaging of its licensed foam rollers with U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,201,571; and 12,193,986. Venture Products also identifies Performance Solutions' website directly on the product packaging by stating: "Patents: https://theraroll.com/IP". The virtual patent marking page identifies the Athletic Works and Renew licensed foam roller products by product name and UPC. The virtual patent marking page states that the identified licensed foam rollers "are protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571."

140. *Implus Footcare, LLC (owner of the TriggerPoint brand)*. Implus entered into a Patent License Agreement with Performance Solutions effective May 1, 2017, and began marking its licensed products thereafter. Implus identifies Performance Solutions' website directly on the product packaging by stating: "Patents / Brevets / Patentes: https://theraroll.com/IP". The virtual patent marking page identifies the CARBON, CHANNEL, CHARGE, CORE, ETHOS, GRID, MOBILITY, NANO, PERFECT, and RUSH licensed foam roller by product name, UPC, and ASIN. The virtual patent marking page states that the identified licensed foam rollers "are protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571."

141. *321 Strong (owner of the Halcyon brand)*. 321 Strong entered into a Patent License Agreement with Performance Solutions effective January 25, 2018, and began marking its licensed products thereafter. 321 Strong physically marks the product packaging of its licensed foam rollers as protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571.

142. *MaiBo (Shenzhen) Technology Co., Ltd. (owner of the FitBeast brand)*. MaiBo entered into a Patent License Agreement with Performance Solutions effective May 20, 2024, and

began marking its licensed products thereafter. MaiBo marks the product packaging of its licensed foam rollers with, among others, U.S. Patents Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,201,571; 12,193,986. MaiBo also identifies Performance Solutions' website directly on the product packaging by stating: "Patents: https://theraroll.com/IP". The virtual patent marking page (listed under FitBeast) identifies the Fitbeast licensed foam roller products by product name and ASIN. The virtual patent marking page states that the identified licensed foam rollers are protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571.

143. *Zmarthumb International Limited*. Zmarthumb entered into a Patent License Agreement with Performance Solutions effective June 17, 2024, and began marking its licensed products thereafter. Zmarthumb marks the product packaging of its licensed foam rollers with U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571. Zmarthumb also identifies Performance Solutions' website directly on the product packaging by stating: "Patents: https://theraroll.com/IP". The virtual patent marking page identifies the Chynique, CINDALOG, Joyenergy, JOYVANTAGE, Krightlink, LTHTRADE, SUBCULTUREPICK, and Zmarthumb licensed foam roller products by product name and ASIN. The virtual patent marking page states that the identified licensed foam rollers "are protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571."

144. *Oceanfoam, LLC*. Oceanfoam entered into a Patent License Agreement with Performance Solutions effective October 2, 2024, and began marking its licensed products thereafter. Oceanfoam identifies Performance Solutions' website directly on the product packaging by stating: "Patents: https://theraroll.com/IP". The virtual patent marking page identifies the Medium Roller, Ripple Roller, Tidal Roller, and Tsunami Roller licensed foam roller by product name, UPC, and ASIN. The virtual patent marking page states that the identified licensed foam

rollers are either "protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571," or "protected by U.S. Patent Nos. 12,193,986 and 12,201,571."

145. *Shenzhen Shi Ouruiyu Technology Co. Ltd. (owner of the Aucuu brand)*. Shenzhen entered into a Patent License Agreement with Performance Solutions effective October 23, 2024, and began marking its licensed products thereafter. Shenzhen marks the product packaging of its licensed foam rollers with U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,201,571; and 12,193,986. Shenzhen also identifies Performance Solutions' website directly on the product packaging by stating: "Patents: https://theraroll.com/IP". The virtual patent marking page identifies the Aucuu licensed foam roller products by product name and ASIN. The virtual patent marking page states that the identified licensed foam rollers "are protected by U.S. Patent Nos. 9,539,167; 9,656,112; 10,278,890; 10,695,260; 12,193,986; and 12,201,571."

146. Collectively, Performance Solutions' licensees' physical marking of product packaging and virtual patent marking pages linked through https://theraroll.com/IP identify hundreds of licensed foam roller product listings offered for sale in the United States that practice the claims of the Asserted Patents. Those marking activities have been substantially consistent and continuous from at least the dates identified above through the present, and have provided constructive notice of the Asserted Patents to the public - including to Defendant, which competes directly with Performance Solutions' licensees in the same Amazon foam roller marketplace on which many of those licensed products are marked and sold.

147. Performance Solutions has caused its licensees to comply with 35 U.S.C. § 287(a) through the marking obligations imposed by their license agreements; Performance Solutions' licensees have marked their licensed products physically and/or through virtual marking consistent with 35 U.S.C. § 287(a) since at least the dates identified above; that marking has been

substantially consistent and continuous from those dates through the present; and Defendant had constructive and/or actual notice of the Asserted Patents no later than the dates set forth herein and in the "Defendant's Sophistication and Actual Notice of Performance Solutions' Patent Rights" section below. Accordingly, Performance Solutions is entitled to recover pre-suit damages for Defendant's infringement of the Asserted Patents under 35 U.S.C. § 287(a).

### B. Defendant's Sophistication and Actual Notice of Performance Solutions' Patent Rights

148. Defendant is a sophisticated participant in the foam roller market, not an inexperienced seller unaware of patent rights in this field. On April 9, 2025, twenty patents and patent applications were transferred from Plexus Yoga, LLC to Chirp Innovation, Inc., now Chirp Innovation, LLC. Defendant's patent portfolio demonstrates that Defendant has the resources and expertise to identify, evaluate, acquire, and prosecute patents relating to massage, therapeutic, and foam roller products.

149. Defendant had notice of Performance Solutions' patent rights from the marketplace in which Defendant chose to compete. Through years of enforcement and licensing efforts, Performance Solutions substantially converted the Amazon foam roller market from one populated by unauthorized sellers into one increasingly populated by authorized, patent-marked licensed products. Those licensed products are marked with the Asserted Patents on their product packaging, and many licensed Amazon listings identify the Asserted Patents by number. For example, since as early as 2018, 321Strong has identified then-issued Asserted Patents on its Amazon listing pages. Chirp sold and continues to sell the Accused Products in that same Amazon foam roller marketplace, side-by-side with Performance Solutions' licensed products.

150. Defendant's notice was not limited to passive exposure in the marketplace. As previously discussed, Chirp directly compared its Wheel+ against a licensed 321Strong foam roller

practicing Performance Solutions' patented technology in a YouTube video posted on November 9, 2019. The licensed 321Strong product was marked with Performance Solutions patent numbers, including then-issued Asserted Patents. Chirp therefore was not merely operating in the same marketplace as patent-marked licensed products; it selected one of those products as the direct comparator for its own accused product.

151. The comparison was not neutral. Chirp criticized the licensed 321Strong foam roller as "soft," digitally altered the product image to portray it moving side-to-side, and suggested that the licensed product lacked stability, firmness, and therapeutic effectiveness. Chirp then urged consumers to choose the Wheel+ instead, promoting it as a firmer product for "pain-reducing relief." That video confirms that Chirp positioned the Accused Products as substitutes for licensed foam roller products practicing Performance Solutions' patented technology.

152. Chirp was aware that its Accused Products had risen to a leading position on Amazon while competing against Performance Solutions' licensed products and while remaining among the few prominent unlicensed products in the foam roller market. Chirp's position in the same marketplace as authorized, patent-marked products, together with its direct comparison to a marked licensed 321Strong product, provided notice of Performance Solutions' patent rights and, at minimum, required a sophisticated seller like Chirp to investigate whether its products required a license.

153. Defendant also had actual, direct notice of Performance Solutions' patent portfolio through prosecution of Defendant's own design patent application for a "Massage Device." On July 30, 2024, Defendant filed U.S. Design Patent Application No. 29/954,976, entitled "Massage Device," with the USPTO directed to its XR 4-inch product. The application identified Chirp Innovation, Inc. as the applicant, listed Tate Sherman Stock as one of six named co-inventors, and

was prosecuted by Defendant's patent counsel, Lee & Hayes, P.C. The application issued as U.S. Design Patent No. D1,111,184 on February 3, 2026.

154. During prosecution of that application, the USPTO examiner conducted prior-art searches covering massage rollers, massage devices, and related therapeutic products. The examiner's search history identified multiple Performance Solutions patents by patent number, including the asserted '167 Patent and U.S. Patent Nos. 7,918,774, 8,002,682, and 9,345,921. The '167 Patent – one of the Asserted Patents in this action – appeared in at least four separate prior art search queries across multiple search sessions, including sessions conducted on or about March 11, 2025, and August 21, 2025.

155. The examiner's repeated identification of Performance Solutions patents during prosecution of Defendant's "Massage Device" application underscores the direct relevance of Performance Solutions' patented technology to Defendant's product line. Defendant and its patent counsel received or had access to the September 19, 2025 "Examiner's search strategy and results" communication, as well as the full prosecution file wrapper through the USPTO's Patent Center system.

156. Defendant is a sophisticated market participant that retained experienced patent counsel to prosecute its own patent application in the same product field as the Accused Products. Through that prosecution, Defendant and its counsel received or had access to USPTO communications specifically identifying Performance Solutions' patents, including an Asserted Patent, as prior art relevant to Defendant's own "Massage Device." Despite that notice, despite directly comparing its Accused Product to a marked licensed 321Strong foam roller, and despite competing in the same Amazon marketplace as Performance Solutions' licensed and patent-marked products, Defendant continued selling the Accused Products without seeking a license,

without designing around the Asserted Patents, and without stopping its infringing sales.

157. The following chronology summarizes principal events relevant to Defendant's sophistication and actual notice of Performance Solutions' patent rights:

**Fig. 28. Chirp's Actual Notice of Performance Solutions' Patents**




### C. Defendant's Prior Intellectual Property Judgment Further Supports Willfulness

158. Defendant's litigation history further demonstrates that its infringement of the Asserted Patents was and is willful.

159. Defendant previously faced federal litigation involving accusations that it manufactured and sold "knockoff" versions of another company's patented therapeutic product while also using that company's trademarks and copyrighted marketing materials without authorization.

160. In July 2019, The Neck Hammock, Inc. sued Defendant in the United States District Court for the District of Utah for wrongful conduct involving Neck Hammock's patented cervical

traction device.[49]

161. On October 1, 2019, the court entered a consent judgment and permanent injunction against Defendant on claims for patent infringement, trademark infringement, unfair competition, and copyright infringement.[50] The consent judgment described Defendant's products as "knock-off products."[51] Defendant agreed, among other things, that it "unlawfully and without authorization infringed one or more claims of" Neck Hammock's utility patent and infringed three design patents, which "caused irreparable harm to Neck Hammock."[52] The injunction barred Defendant and its officers, agents, servants, and employees from making, selling, advertising, manufacturing, importing, or distributing the infringing products or any colorable imitation thereof.[53]

162. Defendant also agreed to destroy its remaining inventory of 3,816 knockoff devices and to remove advertising and promotional materials containing Neck Hammock's trademarks and copyrighted works.[54]

163. That consent judgment was entered while Defendant was already selling the Chirp Wheel+ product line accused in this action.

164. A company that has consented to a federal judgment involving knockoff patented products, accepted a permanent injunction, and destroyed thousands of infringing devices should understand the importance of investigating and respecting competitors' patent rights.

165. Defendant nevertheless continued selling products that practice Performance

---

49 Exhibit 84, Consent Judgment and Permanent Injunction, *Neck Hammock, Inc. v. Chirp, et al.*, No. 2:19-cv-00521-TS (D. Utah Oct. 1, 2019), ECF No. 9.

50 *Id.* ¶¶ 11, 15, 19, 21, 24, 26.

51 *Id.* ¶ 11.

52 *Id.* ¶¶ 24-25.

53 *Id.* ¶ 30(c).

54 *Id.* ¶¶ 30(d), (e).

Solutions' patented technology without seeking a license, designing around the Asserted Patents, or stopping sales.

## IX. CAUSES OF ACTION

### COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 9,539,167

166. Performance Solutions hereby restates and incorporates ¶¶ 1–165 of this Complaint.

167. The '167 Patent is presumed valid.

168. Defendant has directly infringed and continues to directly infringe at least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 of the '167 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

169. The following Accused Products infringe at least the following claims of the '167 Patent:

| Accused Product | Infringed Claims of the '167 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 7 |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 13 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 19 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 25 |

| Accused Product | Infringed Claims of the '167 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel XL - Super Comfort | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 31__ |
| Chirp Wheel Pro | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 37 |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 5, 6, 12, 13, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 43 |
| Chirp Wheel XR 6-inch Knot Kneader | At least claims 1, 5, 6, 12, 13, 14, 16, 18, 23, 24, 25, 26, and 31 | Exhibit 49__ |

170. The infringement claim charts attached to this Complaint as Exhibits 7, 13, 19, 25, 31, 37, 43 and 49 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the '167 Patent.

171. Performance Solutions' infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant's own marketing materials describing the Accused Products' core, overlay, and projections. The infringement charts attached as Exhibits 7, 13, 19, 25, 31, 37, 43 and 49 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions' infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

172. As a direct and proximate result of Defendant's acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

173. Defendant's infringement of the '167 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,656,112

174. Performance Solutions hereby restates and incorporates ¶¶ 1–173 of this Complaint.

175. The '112 Patent is presumed valid.

176. Defendant has directly infringed and continues to directly infringe at least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 of the '112 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

177. The following Accused Products infringe at least the following claims of the '112 Patent:

| Accused Product | Infringed Claims of the '112 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 8 |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 14 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 20 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 26 |

| Accused Product | Infringed Claims of the ’112 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel XL - Super Comfort | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 32__ |
| Chirp Wheel Pro | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 38 |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 23 | Exhibit 44__ |

178. The infringement claim charts attached to this Complaint as Exhibits 8, 14, 20, 26, 32, 38 and 44 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the ’112 Patent.

179. Performance Solutions’ infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant’s own marketing materials describing the Accused Products’ core, overlay, and projections. The infringement charts attached as Exhibits 8, 14, 20, 26, 32, 38 and 44 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions’ infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

180. As a direct and proximate result of Defendant’s acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

181. Defendant’s infringement of the ’112 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of

reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 10,278,890

182. Performance Solutions hereby restates and incorporates ¶¶ 1–181 of this Complaint.

183. The '890 Patent is presumed valid.

184. Defendant has directly infringed and continues to directly infringe at least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 of the '890 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

185. The following Accused Products infringe at least the following claims of the '890 Patent:

| Accused Product | Infringed Claims of the '890 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 9 |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 15 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 21 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 27 |
| Chirp Wheel XL - Super Comfort | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 33 |

| Accused Product | Infringed Claims of the ’890 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel Pro | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 39__ |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 2, 3, 7, 9, 10, 17, 18, 19, 20, 21, 22, 23, and 25 | Exhibit 45__ |

186. The infringement claim charts attached to this Complaint as Exhibits 9, 15, 21, 27, 33, 39 and 45 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the ’890 Patent.

187. Performance Solutions’ infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant’s own marketing materials describing the Accused Products’ core, overlay, and projections. The infringement charts attached as Exhibits 9, 15, 21, 27, 33, 39 and 45 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions’ infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

188. As a direct and proximate result of Defendant’s acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

189. Defendant’s infringement of the ’890 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys’ fees pursuant to 35 U.S.C. § 285.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 10,695,260**

190. Performance Solutions hereby restates and incorporates ¶¶ 1–189 of this Complaint.

191. The ’260 Patent is presumed valid.

192. Defendant has directly infringed and continues to directly infringe at least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 of the ’260 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

193. The following Accused Products infringe at least the following claims of the ’260 Patent:

| Accused Product | Infringed Claims of the ’260 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 10 |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 16 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 22 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 28 |
| Chirp Wheel XL - Super Comfort | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 34 |

| Accused Product | Infringed Claims of the ’260 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel Pro | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, 28 | Exhibit 40__ |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 2, 3, 5, 6, 10, 12, 20, 21, 22, 23, 24, 25, 26, and 28 | Exhibit 46__ |

194. The infringement claim charts attached to this Complaint as Exhibits 10, 16, 22, 28, 34, 40 and 46 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the ’260 Patent.

195. Performance Solutions’ infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant’s own marketing materials describing the Accused Products’ core, overlay, and projections. The infringement charts attached as Exhibits 10, 16, 22, 28, 34, 40 and 46 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions’ infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

196. As a direct and proximate result of Defendant’s acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

197. Defendant’s infringement of the ’260 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys’ fees pursuant to 35 U.S.C. § 285.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 12,193,986

198. Performance Solutions hereby restates and incorporates ¶¶ 1–197 of this Complaint.

199. The ’986 Patent is presumed valid.

200. Defendant has directly infringed and continues to directly infringe at least claims 1, 2, 4, 5, 10, 11, and 20 of the ’986 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

201. The following Accused Products infringe at least the following claims of the ’986 Patent:

| Accused Product | Infringed Claims of the ’986 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 11 |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 17 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 23 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 29 |
| Chirp Wheel XL - Super Comfort | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 35 |
| Chirp Wheel Pro | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 41 |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 2, 4, 5, 10, 11, and 20 | Exhibit 47 |
| Chirp Wheel XR 6-inch Knot Kneader | At least claims 1, 2, 4, 5, 10, 11, 12, and 20 | Exhibit 50 |

| Accused Product | Infringed Claims of the ’986 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel XR 4-inch Neck & Headache | At least claims 1, 2, 4, 5, 10, 11, 12, and 20 | Exhibit 52__ |

202. The infringement claim charts attached to this Complaint as Exhibits 11, 17, 23, 29, 35, 41, 47, 50 and 52 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the ’986 Patent.

203. Performance Solutions’ infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant’s own marketing materials describing the Accused Products’ core, overlay, and projections. The infringement charts attached as Exhibits 11, 17, 23, 29, 35, 41, 47, 50 and 52 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions’ infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

204. As a direct and proximate result of Defendant’s acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

205. Defendant’s infringement of the ’986 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys’ fees pursuant to 35 U.S.C. § 285.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 12,201,571

206. Performance Solutions hereby restates and incorporates ¶¶ 1–205 of this

Complaint.

207. The ’571 Patent is presumed valid.

208. Defendant has directly infringed and continues to directly infringe at least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 of the ’571 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products within the Wheel+, Wheel XR, Wheel XL, and Wheel Pro product lines.

209. The following Accused Products infringe at least the following claims of the ’571 Patent:

| **Accused Product** | **Infringed Claims of the ’571 Patent** | **Product-Specific Infringement Chart** |
|---|---|---|
| Chirp Wheel+ 12-inch Gentle | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 12__ |
| Chirp Wheel+ 10-inch Deep Stretch | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 18 |
| Chirp Wheel+ 6-inch Deep Tissue | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 24 |
| Chirp Wheel+ 4-inch Focus | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 30 |
| Chirp Wheel XL - Super Comfort | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 36 |
| Chirp Wheel Pro | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 42 |
| Chirp Wheel XR 10-inch Acupressure | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 48 |

| Accused Product | Infringed Claims of the ’571 Patent | Product-Specific Infringement Chart |
|---|---|---|
| Chirp Wheel XR 6-inch Knot Kneader | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 51__ |
| Chirp Wheel XR 4-inch Neck & Headache | At least claims 1, 2, 4, 5, 11, 13, 14, 20, 21, 24, 25, and 26 | Exhibit 53 |

210. The infringement claim charts attached to this Complaint as Exhibits 12, 18, 24, 30, 36, 42, 48, 51 and 53 identify how the Accused Products include every limitation of at least one asserted claim, including a cylindrically shaped core made of plastic, an overlay made of closed-cell EVA foam surrounding the core, and projections extending outward from the overlay that are configured to extend into soft tissue of a user. Each infringement chart is specific to the Accused Product identified in that chart and maps that product to the asserted limitations of the ’571 Patent.

211. Performance Solutions’ infringement allegations are supported by product-specific inspection, disassembly, material analysis, density measurements, dimensional measurements, and Defendant’s own marketing materials describing the Accused Products’ core, overlay, and projections. The infringement charts attached as Exhibits 12, 18, 24, 30, 36, 42, 48, 51 and 53 are incorporated by reference as if fully set forth herein. Nothing in those exhibits limits Performance Solutions’ infringement allegations, and Performance Solutions reserves the right to identify additional infringing products, asserted claims, and infringement theories as discovery proceeds.

212. As a direct and proximate result of Defendant’s acts of infringement, Performance Solutions has suffered and continues to suffer damages in an amount to be determined.

213. Defendant’s infringement of the ’571 Patent is knowing and willful, supporting treble damages under 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys’ fees pursuant to 35 U.S.C. § 285.

## X. DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Performance Solutions demands a trial by jury of all causes of action that are so triable.

## XI. PRAYER FOR RELIEF

WHEREFORE, Performance Solutions respectfully requests that this Court enter judgment for Performance Solutions and against Defendant as follows:

A. An adjudication that Defendant has infringed each of the Asserted Patents;

B. Permanently enjoin Defendant and its officers, agents, divisions, affiliates, subsidiaries, successors, employees and representatives, and all those controlled by or acting in concert or privity with them, from infringing the '167, '112, '890, '260, '986, and '571 Patents.

C. An adjudication that Defendant's infringement is and has been willful;

D. An award of damages to be paid by Defendant adequate to compensate Performance Solutions for Defendant's past infringement and any continuing or future infringement through the date such judgment is entered, including prejudgment and post-judgment interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

E. An award of enhanced and trebled damages under 35 U.S.C. § 284;

F. A declaration that this case is exceptional and award Performance Solutions its reasonable attorney fees and costs incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 285.

G. An award to Performance Solutions of such further relief at law or in equity as the Court deems just and proper.

Dated: August 6, 2026

*Of Counsel*:

NIXON PEABODY LLP
Ashe P. Puri (*pro hac vice* forthcoming)
Joshua J. Pollack (*pro hac vice* forthcoming)
Vincent Capati (*pro hac vice* forthcoming)
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000
Fax: (213) 629-6001
APuri@nixonpeabody.com
JPollack@nixonpeabody.com
VCapati@nixonpeabody.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ *Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
(302) 571-1253
PKraman@ycst.com
JSiew@ycst.com

*Attorneys for Plaintiff Performance Solutions, LLC*

## XII. TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 9,539,167 |
| Exhibit 2 | U.S. Patent No. 9,656,112 |
| Exhibit 3 | U.S. Patent No. 10,278,890 |
| Exhibit 4 | U.S. Patent No. 10,695,260 |
| Exhibit 5 | U.S. Patent No. 12,193,986 |
| Exhibit 6 | U.S. Patent No. 12,201,571 |
| Exhibit 7 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 8 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 9 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 10 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 11 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 12 | Chirp Wheel+ 12 Gentle - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 13 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 14 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 15 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 16 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 17 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 18 | Chirp Wheel+ 10 Deep Stretch - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 19 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 20 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '112 Patent |

| | |
|---|---|
| Exhibit 21 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 22 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 23 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 24 | Chirp Wheel+ 6 Deep Tissue - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 25 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 26 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 27 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 28 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 29 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 30 | Chirp Wheel+ 4 Focus - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 31 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 32 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 33 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 34 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 35 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 36 | Chirp Wheel XL - Super Comfort - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 37 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 38 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 39 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 40 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 41 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '986 Patent |

| | |
|---|---|
| Exhibit 42 | Chirp Wheel Pro - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 43 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 44 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '112 Patent |
| Exhibit 45 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '890 Patent |
| Exhibit 46 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '260 Patent |
| Exhibit 47 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 48 | Chirp Wheel XR 10 Acupressure - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 49 | Chirp Wheel XR 6 Knot Kneader - Infringement Contention Patent Claim Chart - '167 Patent |
| Exhibit 50 | Chirp Wheel XR 6 Knot Kneader - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 51 | Chirp Wheel XR 6 Knot Kneader - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 52 | Chirp Wheel XR 4 Neck & Headache - Infringement Contention Patent Claim Chart - '986 Patent |
| Exhibit 53 | Chirp Wheel XR 4 Neck & Headache - Infringement Contention Patent Claim Chart - '571 Patent |
| Exhibit 54 | Amazon, *Best Sellers in Foam Rollers*, https://www.amazon.com/Best-Sellers-Foam-Rollers/zgbs/sporting-goods/3407871 (last visited Aug. 1, 2026) |
| Exhibit 55 | AOK Health, Internet Archive Wayback Machine (Jul. 25, 2010) https://web.archive.org/web/20100725195914/http://aokhealth.com:80/ |
| Exhibit 56 | AOK Health, *About AOK Health – Balance Training*, https://www.aokhealth.com/aboutaok-health-balance-training.asp (last visited Aug. 1, 2026) |
| Exhibit 57 | Damien Kelly, *Top Exercise Equipment for 2011*, Body + Soul Magazine (Jan. 16, 2011), https://www.bodyandsoul.com.au/fitness/workouts/top-exercise-equipment-for-2011/news-story/a5c038c08ed5b90f3617190e054086a7 |
| Exhibit 58 | Walmart, *321 STRONG 5-in-1 Exercise Foam Roller, Set Includes Hollow Core Massage Roller with End Caps, Muscle Stick, Stretching Strap, Double Lacrosse Peanut, Spikey Plantar Fasciitis Ball*, https://www.walmart.com/ip/321-STRONG-5-in-1-Exercise-Foam-Roller-Set-Includes-Hollow-Core-Massage-Roller-End-Caps-Muscle-Stick-Stretching-Strap-Double-Lacrosse-Peanut-Spikey-P/783950082 (last visited Aug. 1, 2026) |

| | |
|---|---|
| Exhibit 59 | TriggerPoint, *TriggerPoint® Licenses Performance Solutions Patents*, American Spa (Jun. 21, 2017), https://www.americanspa.com/press-releases/triggerpoint-r-licenses-performance-solutions-patents |
| Exhibit 60 | Rumble Roller, *Frequently Asked Questions*, https://store-rumbleroller.myshopify.com/pages/faq (last visited Aug. 1, 2026) |
| Exhibit 61 | Amazon, *Customer Reviews: 321 Strong Foam Roller — Medium Density Deep Tissue Massager for Muscle Massage and Myofascial Trigger Point Release, with 4K eBook*, https://www.amazon.com/portal/customer-reviews/B07FY5P24Q/ref=cm_cr_dp_d_show_all_top?_encoding=UTF8&ie=UTF8&reviewerType=all_reviews (last visited Aug. 1, 2026) |
| Exhibit 62 | Oceanfoam, *Oceanfoam Signs Licensing Agreement with Performance Solutions for its Tidal Rollers*, PR Newswire (Oct. 24, 2024), https://www.prnewswire.com/news-releases/oceanfoam-signs-licensing-agreement-with-performance-solutions-for-its-tidal-rollers-302284885.html |
| Exhibit 63 | PowX Inc. v. Performance Solutions, LLC, No. 24-CV-01389 (S.D.N.Y. June 14, 2024). |
| Exhibit 64 | *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003470, Reexamination Control No. 90/014,621 (P.T.A.B. Dec. 6, 2023) ("PTAB Decision for the '167 Patent") |
| Exhibit 65 | *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003471, Reexamination Control No. 90/014,620 (P.T.A.B. Dec. 6, 2023) ("PTAB Decision for the '112 Patent") |
| Exhibit 66 | *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003494, Reexamination Control No. 90/014,616 (P.T.A.B. Dec. 6, 2023) ("PTAB Decision for the '890 Patent") |
| Exhibit 67 | *Ex parte Performance Solutions, LLC*, Appeal No. 2023-003493, Reexamination Control No. 90/014,614 (P.T.A.B. Dec. 6, 2023) ("PTAB Decision for the '260 Patent") |
| Exhibit 68 | Chirp, *Chirp Wheel+ 3-Pack*, https://gochirp.com/products/chirp-wheel-3-pack (last visited Aug. 1, 2026) |
| Exhibit 69 | Amazon, *Chirp Wheel+ Foam Roller, Back & Neck Pain Relief, Mint 12-lnch*, https://www.amazon.com/dp/B07TMRP6M6/ref=sp_asa_clp?th=1 (last visited Aug. 1, 2026) |
| Exhibit 70 | Chirp, *Chirp Wheel XR 3-Pack*, https://gochirp.com/products/chirp-wheel-xr-3-pack (last visited Aug. 1, 2026) |
| Exhibit 71 | Amazon, *Chirp Wheel XR 10" Acupressure Back Roller for Muscle Relief, Mint*, https://www.amazon.com/Chirp-Wheel-XR-Acupressure-Back-Relief/dp/B0CDN6THZJ/ref=sr_1_1 (last visited Aug. 1, 2026) |
| Exhibit 72 | Amazon, *Chirp Wheel XR 4" Neck Wheel for Headache and Tension Relief, Mint*, https://www.amazon.com/dp/B0CDN5Y6J4?th=1 (last visited Aug. 1, 2026) |

| | |
|---|---|
| Exhibit 73 | *PowX Inc. v. Performance Solutions, LLC*, No. 24-CV-01389 (S.D.N.Y. March 3, 2026). |
| Exhibit 74 | Transcript of *The Startup Life* podcast, "Tate Stock: Creator of the Chirp Wheel" ("Startup Life Transcript") (Dec. 14, 2020), https://podcasts.apple.com/us/podcast/tate-stock-creator-of-the-chirp-wheel/id1171309988?i=1000502322742 |
| Exhibit 75 | Transcript of *The Story of a Brand* podcast, "Chirp - The World's Simplest Back Pain Relief" ("Story of a Brand Transcript") (June 20, 2024), https://podcasts.apple.com/us/podcast/chirp-the-worlds-simplest-back-pain-relief/id1435740265?i=1000659636693 |
| Exhibit 76 | MAG Elite, *Chirp Case Study* ("Chirp Case Study"), at 1, 3, https://magelite.agency/chirp-case-study/ (last visited July 10, 2026) |
| Exhibit 77 | Amazon, *Plexus Chirp Wheel*, Internet Archive Wayback Machine (Nov. 30, 2020), https://web.archive.org/web/20201130210537/https://www.amazon.com/dp/B07TLP8DKCIref=cm_sw_r cp_api_i_bBPWFbG797H70 |
| Exhibit 78 | Amazon, *Chirp Wheel+*, Internet Archive Wayback Machine (Nov. 9, 2021), web.archive.org/web/20211109182946/https://www.amazon.com/dp/B07TLP8DKCP coliid=INJYR0Y4IGJNC&colid=JASOXRMRE9EMpsc=1 |
| Exhibit 79 | Amazon, *321 STRONG Foam Roller – Extra Firm High Density Deep Tissue Massager with Spinal Channel*, Internet Archive Wayback Machine (Nov. 29, 2020), https://web.archive.org/web/20201129055520/https://www.amazon.com/321-STRONG-Foam-Roller-cMassager/dp/B07T8HGWGS |
| Exhibit 80 | *Krightlink 5-in-1 Foam Roller Set*, https://www.amazon.com/Krightlink-Massage-Density-Exercise-Resistance/dp/B0D4GZPX3T (last visited July 28, 2026) |
| Exhibit 81 | Amazon, *Oceanfoam Ripple Travel Foam Roller*, https://www.amazon.com/Oceanfoam-Mini-Travel-Foam-Roller/dp/B0D4SQW7ZJ (last visited July 28, 2026) |
| Exhibit 82 | Amazon, *Zmarthumb 15 inch High Density*, https://www.amazon.com/Zmarthumb-Massager-Massage-Myofascial-Exercise/dp/B0D9K43N95 (last visited July 28, 2026) |
| Exhibit 83 | Amazon, *FitBeast Back Roller*, https://www.amazon.com/FitBeast-Back-Roller-Stretcher-Stretching/dp/B0CJXV13K7 (last visited July 28, 2026) |
| Exhibit 84 | Consent Judgment and Permanent Injunction, *Neck Hammock, Inc. v. Chirp, et al.*, No. 2:19-cv-00521-TS (D. Utah Oct. 1, 2019), ECF No. 9 |
| Exhibit 85 | March 23, 2021 Declaration of Bradley Wilson, Reexamination Control No. 90/014,614 |